WARNER MOORE, JR., EXECUTOR (ESTATE OF WARNER MOORE) *v.* THE WATERBURY TOOL COMPANY ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued February 3d—decided April 8th, 1938.

*Richardson Bronson,* for the appellant (plaintiff).

*William W. Gager,* for the appellee (named defendant).

AVERY, J. This action was originally brought by Warner Moore, as plaintiff, against The Waterbury Tool Company, a domestic corporation, and Francis H. Clergue, as defendants. Pending the action, and before trial, the plaintiff died and his son Warner Moore, Jr., was substituted as plaintiff. The complaint was originally in three counts. The first count set up that on May 11th, 1931, the plaintiff was the owner of thirty-one hundred and sixty-six shares of common stock of the Tool Company and was indebted to the company on two promissory notes, one dated December 11th, 1930, payable four months after date, for $10,000, and the other dated April 27th, 1931, payable on demand, for $5000; and that prior to that date the plaintiff had pledged nineteen hundred and seventy-eight shares of his stock as collateral security for the payment of the debt evidenced by the two notes, and that on that day the defendant corporation, in accordance with a resolution passed at a meeting of its directors, took over the plaintiff's stock, which then had a value in excess of $80,000, held by it as collateral, to liquidate the plaintiff's indebtedness to the corporation. By an amendment to the complaint offered at the trial it was alleged that this was done without the authority of the plaintiff, and the defendant thereby converted the property to its own use. The second count was for money had and received; and the third count was against Clergue, in-

dividually. At the opening of the trial, the second and third counts were withdrawn and the case was tried upon the issues raised under the first count. These issues were three: First, that there was no conversion of the stock on May 11th, 1931; second, that if the defendant was without authority to take over the stock on that date, its action in so doing was subsequently ratified by Moore; third, that even if there was a conversion and the action of the company in taking over the stock was not ratified by Moore, the plaintiff was estopped from asserting his claim thereto by reason of events that had happened subsequent to the time when the stock was taken over. The case was tried to the jury upon these issues and a verdict returned in favor of the defendant, from which the plaintiff has appealed claiming errors in the charge of the court to the jury.

The charge of the court is tested by the claims of proof of the parties, which may be summarized as follows: The plaintiff was throughout all the period covered by this controversy vice-president and a director of the company. He owned thirty-one hundred and seventy-eight shares of its stock. In April, 1931, he was indebted to the company to the amount of $15,000, represented by notes which were overdue, and the company held fourteen hundred and eighty shares of his stock as collateral for the loan, and it claimed also to hold an additional four hundred and ninety-eight shares as collateral, but he claimed that the note for which these shares were given as security was never accepted by it. On April 13th, 1931, the company caused the nineteen hundred and seventy-eight shares to be transferred to its name. On May 4th, 1931, the secretary of the company notified Moore that a meeting of its directors was to be held at its office on May 11th, 1931, for the purpose of acting upon loans to

him, and on the same date the secretary advised him in writing that the directors had decided to offer the collateral for sale at its office on that day. On May 5th, 1931, a conference was held between the plaintiff and Clergue, the president of the company. The plaintiff claimed that at this conference they failed to reach an understanding as to the disposal of the collateral, although each party left the conference feeling that an agreement had been reached; that he did not agree to allow his stock to be taken over in liquidation of the company's claim against him or that the four hundred and ninety-eight shares should be held as collateral security for any of his notes; and that after the conference he believed that Clergue had agreed that the stock was to be held by the company and the dividends declared thereon were to be applied to the liquidation of the indebtedness. The defendant, on the other hand, claimed that at this conference it was decided not to make a public offering of the stock but that the company should take it over in full satisfaction of the notes, in order to avoid having the shares go into the hands of strangers and to keep the stock of the company closely held, and because the sum received by its sale could hardly be expected to liquidate the debt. At the meeting of the board of directors held on May 11th the secretary reported that the plaintiff had expressed a wish to surrender to the company the collateral and receive back his notes duly cancelled, and it was voted that this proposal be accepted, and the secretary be instructed to return the notes, cancelled, the shares having already been transferred to the company. The plaintiff being notified of this action remonstrated against it as not representing the agreement reached at the conference between himself and Clergue, and a series of letters passed between the two, Clergue contending that the arrange-

ment was in accordance with the agreement between them and stating that, subject to confirmation by the directors, the plaintiff might have the stock back upon paying the indebtedness to the company. On May 25th, 1931, the secretary of the company sent a memorandum to the plaintiff showing the balance due with accrued interest as of May 11th, 1931, of $14,311.95, and the application of the nineteen hundred and seventy-eight shares of stock having a par value of $49,450 as received in full payment of the indebtedness. The plaintiff refused to pay that sum and claimed that the taking over of the shares by the company was in violation of his rights and so advised Clergue as president of the company. The notes were cancelled and returned to the plaintiff and he retained them and neither he nor his executor has offered to pay any interest or principal on them or return them to the company.

The defendant further offered evidence to prove the following facts: On February 23d, 1932, Moore personally attended and signed the minutes of the annual stockholders' meeting reciting him as owning eleven hundred and eighty-eight shares of stock, containing a resolution approving all actions taken by the board of directors during the past year, and approving an audit of the company's books disclosing that Moore's nineteen hundred and seventy-eight shares had been taken over in cancellation of his indebtedness and was held as treasury stock. He attended other stockholders' and directors' meetings, approved financial statements showing the result of the transaction of May 11th, 1931, signed minutes disclosing him as owner of eleven hundred and eighty-eight shares only, and except for remonstrates addressed to Clergue personally in no way signified to any other director any disagreement with the action taken by the company. All cor-

respondence between Clergue and Moore relating to the transaction was treated as personal and did not remain in the files of the company and there was nothing in its records to indicate that the transaction was other than bona fide acquisition by the company of the nineteen hundred and seventy-eight shares of stock as treasury stock in satisfaction of the debt owing by Moore.

For some time previous to 1934, with the full knowledge and consent of Moore, Clergue had been endeavoring to sell The Waterbury Tool Company; and, on November 1st, acting on behalf of the company and its stockholders he accepted an offer of the Sperry Corporation to acquire the entire assets of the company for the sum of $450,000. It was uncertain until the final contract was prepared whether the sale would take the form of a conveyance of the assets or of a transfer of the stock. Moore was kept informed of the progress of the negotiations. On November 26th, 1934, a special meeting of the stockholders of the company was held at which Moore was personally present. At that meeting the stockholders by unanimous vote authorized the sale of the Tool Company to the Sperry Corporation for $450,000, the details of the contract other than the price to be worked out by Clergue and counsel for the company. A proposed draft of a contract in substance, particularly as to warranties, the same as the contract finally executed was submitted to Moore and approved by him; and on that same date Moore executed a formal power of attorney authorizing Clergue to transfer eleven hundred and eighty-eight shares of stock standing in his name which was all of his stock as disclosed by the corporate records. It was explained to Moore that if the sale was consummated he would receive his pro rata share of the purchase price based upon his ownership of eleven

hundred and eighty-eight shares and the Sperry Corporation would take over all the assets of the company through its stock purchase, including the nineteen hundred and seventy-eight shares formerly belonging to Moore and then held by the company as treasury stock.

Thereafter the Sperry Corporation caused an examination to be had of the corporate records of the Tool Company including an audit approved by the stockholders, February 23d, 1932. All these records showed that the nineteen hundred and seventy-eight shares formerly belonging to Moore had been regularly acquired in cancellation of his indebtedness and nowhere in the records of the company was there anything to indicate that Moore claimed to have any ownership in these shares or claim against them. On January 22d, 1935, a formal contract of purchase was executed by Clergue on behalf of all owners of stock in the Tool Company with the Sperry Corporation. This contract contained a warranty as to the number of shares outstanding and the number of shares in the treasury which had been acquired by the Tool Company and that all the shares were free and clear of any liens and incumbrances, and that the balance sheet of the company set forth all liabilities thereof. The purchase price was paid by the Sperry Corporation and Clergue duly remitted to Moore his pro rata share based upon the ownership of eleven hundred and eighty-eight shares and the checks in payment were accepted by Moore without objection. Although Moore knew or reasonably should have known the Sperry Corporation relied on the state of records, and the warranty contained in the contract and in the balance sheet attached thereto, he stood by and did not inform the Sperry Corporation of his claim until suit was brought.

The plaintiff requested the court to charge the jury that if a pledgee converted pledged stock the pledgor had no legal duty to pay the debt subsequently or return the note, and that the failure of Moore to offer to return the notes or pay the debt was unimportant if the jury found that there was a conversion. We have defined conversion as " 'An unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm.' " *Coleman* v. *Francis,* 102 Conn. 612, 615, 129 Atl. 718. In its charge the court, among other things, observed: "There is some difference, however, in principle if the conversion was technical only in its nature. Where there has not been any sale or any divesting of one's possession of the collateral but rather a taking of it and an applying of it as against notes, as in this case, but where the collateral was still in the hands of the pledgee, it is the court's instruction and it is the claim of the defendants in this case that if that were the situation, it would be necessary for the plaintiff to offer to put the defendant in status quo before he could go ahead and rely on the conversion as being an absolute deprivation of his rights and his property. . . . Before a pledgor may treat the taking over of his stock by a pledgee as a conversion, he must offer to pay the debt for which the stock was pledged and demand his stock back. Under the circumstances here I say that the conversion was technical rather than complete in the sense of not resulting

in the divesting by the pledgee of the control over the property. If you find in this particular case there was a technical conversion because Mr. Clergue had not accurately reported to the directors what Mr. Moore wanted to have done and that Mr. Moore upon the discovery of that disaffirmed, you would have also to find that Mr. Moore offered to restore the position to the one it was before in order that he have any right of action." And again the court stated: "Even though a pledgee takes over stock held as collateral without prior authorization, such taking over does not constitute a conversion so long as the pledgee —in this case The Waterbury Tool Company—retains the stock in his possession or under his control. That is what I had in mind at the outset when I told you that there would be a distinction between putting it beyond their control, converting it to their use in such a way that they could not get it back, and a technical conversion where it was still really in their possession and in their control. If you find that The Waterbury Tool Company did take over the stock in satisfaction of the debt and thereafter continued to hold the stock as treasury stock, that of course would not constitute conversion, unless you find that was done in violation of the understanding with Mr. Clergue and Mr. Moore."

While considered as abstract propositions of law some of these excerpts from the charge might be subject to criticism, as, for example, the remarks as to "technical conversion," as applied to the situation disclosed by the claims of the parties in this case, the jury could not have understood the charge of the court as a whole upon this subject other than as informing them that, in order to recover in this case, the plaintiff was required to show that there had been a demand for the return of the stock accompanied by

an offer to pay the amount due on the loan which the stock was pledged to secure. In *Coleman* v. *Francis,* supra, 615, it is pointed out that conversions may be grouped into two general classes: "(1) Those where the possession is originally wrongful, and (2) those where it is rightful. The first class comprises a conversion by a wrongful taking, or by an illegal assumption of ownership, or by an illegal user or misuse, or by any other form of possession wrongfully obtained. The second class comprises those where the possession, originally rightful, becomes wrongful by a wrongful detention," and on page 616 we said: "The second class is where the possession, originally rightful, becomes wrongful by reason thereafter of a wrongful detention, or a wrongful use of the property, or the exercise of an unauthorized dominion over the property. In the last two groups of this class, the wrongful use and the unauthorized dominion constitute the conversion; therefore no demand for the return of the personal property is required. In the first group, since the possession is rightful and there is no act of conversion, there can be no conversion until the possessor refuses to deliver up the property upon demand. Unexplained, refusal is evidence from which a conversion may be found."

In the instant case the possession by the Tool Company of the stock was originally rightful. It was held by the Tool Company as security for the payment of the debt to it. It is a general rule that a pledgee of shares has a right to have the stock transferred on the books of the company and doing so does not constitute conversion. *Skiff* v. *Stoddard,* 63 Conn. 198, 217, 26 Atl. 874; *First National Bank* v. *Hartford Life & Annuity Ins. Co.,* 45 Conn. 22, 34; *Palmer* v. *O'Bannon Corp.,* 253 Mass. 8, 149 N. E. 112, 113; *Chase* v. *Boston,* 193 Mass. 522, 79 N. E. 736, 737; *Jones* v.

*Seaman,* 133 App. Div. (N. Y.) 127, 117 N. Y. Sup. 288; 12 Fletcher, Cyclopedia of Corporations, § 5646. The plaintiff's claim of proof is that subsequent to the meeting in New York on May 5th, 1931, between Moore and Clergue, each party left the conference feeling that an agreement had been reached. Thereafter, on May 11th, the Tool Company took over the shares as treasury stock and notified Moore. Upon receiving Moore's statement of protest against the action of the company, Clergue, on June 8th, advised him that, subject to confirmation by the directors, he might have the stock back upon paying his indebtedness to the company. Under the claims of the plaintiff there was not shown such an unauthorized dominion over the property by the Tool Company as would entitle Moore, after he received Clergue's letter, to treat the action of the company as a conversion and sue for the value of the stock without offering to pay the notes. The pledgee was entitled to the possession of the property until it was repaid. It was entitled to have the certificates transferred into its own name. The certificate at all times remained in its hands and subject to its control and could have been delivered to the pledgor upon payment of the loan. Under the circumstances a mere assertion of title was not sufficient to constitute a conversion. *Brown* v. *Leary,* 100 App. Div. (N. Y.) 421, 91 N. Y. Sup. 463, 464, appeal dismissed, 187 N. Y. 558, 559, 80 N. E. 1106.

A nominal transfer of a pledge which does not put the property beyond the control of the pledgee does not amount to a conversion of the pledge. *Day* v. *Holmes,* 103 Mass. 306, 310; *Ritchie* v. *Burke,* 109 Fed. 16, 20; *Davis* v. *Hardwick,* 43 Tex. Civ. App. 71, 74, 94 S. W. 1076; *Hunter* v. *First National Bank,* 172 Ind. 62, 66, 87 N. E. 734; Jones, Collateral Securities

(3d Ed.) § 571b. If a pledgee without authority wrongfully buys in the pledged property the pledgor may repudiate the transaction. Such a sale when repudiated by the pledgor is not a conversion where no change has occurred in the actual condition and situation of the property. "The relation of the parties remains the same as before the sale, the pledgee continuing to hold under the contract of pledge, leaving the title to the property and rights of the parties unaffected, as though no sale had been attempted." *Glidden* v. *Mechanics National Bank,* 53 Ohio St. 588, 600, 42 N. E. 995; *Bryan* v. *Baldwin,* 52 N. Y. 232, 236; *Maryland Fire Ins. Co.* v. *Dalrymple,* 25 Md. 242, 267; *Stokes* v. *Frazier,* 72 Ill. 428, 433. In order to have established a conversion in this case, the plaintiff was required to show a demand for the return of the stock accompanied by an offer to pay the indebtedness and the refusal thereafter by the company to redeliver the stock.

The plaintiff requested the court to charge the jury that the four hundred and ninety-eight shares of stock were taken over by the defendant without authority because that certificate was not actually used as collateral for the two notes pledged and requested the court to direct the jury to bring in a verdict in favor of the plaintiff for the value of the four hundred and ninety-eight shares. Error is assigned because of the failure of the court to charge in accordance with this request. This claim of error is not substantiated by the record. It appears from the defendant's claims of proof that the defendant offered evidence and claimed that this certificate was pledged as security for the $10,000 note. Whether the certificate was pledged or not was a disputed question of fact. Moreover, if there was a conversion of this stock it was not because collateral was disposed of contrary to the

pledgee's power but because stock that was not pledged at all was taken over. The complaint alleges that nineteen hundred and seventy-eight shares were pledged as collateral security for the debt; the answer admitted this. Under these allegations the plaintiff could not, without amendment, claim the right to recover on the ground that part of the nineteen hundred and seventy-eight shares were not in fact pledged. "The plaintiff's allegations are the measure of his right of recovery." *Mazziotti* v. *DiMartino,* 103 Conn. 491, 496, 130 Atl. 844; *Epstein* v. *Blumenthal & Co., Inc.,* 114 Conn. 195, 199, 158 Atl. 234; *Berman* v. *Kling,* 81 Conn. 403, 405, 406, 71 Atl. 507.

In the course of its instructions to the jury the court, after discussing the claim of the defendant Tool Company that there was an understanding between Moore and Clergue that the collateral should be assumed by the company in payment of the debt, stated: "And unless you find that Mr. Clergue testified falsely —and this is an all important issue in the case—your verdict would have to be for the defendant." The appellant assigns error in the use of the phrase "testified falsely," and claims this imposed too great a burden upon the plaintiff. The real question before the jury was whether there had been an understanding between Moore and Clergue as the latter had testified. The jury could have hardly understood from the charge that the court had intended to inform them that they must find for the defendant unless they found that Clergue's testimony was intentionally false or perjured. In the context in which it appears, the instruction amounted to no more than a statement to the jury that if they believed Mr. Clergue's version their verdict should be for the defendant.

There were three defenses interposed in this case. The second defense was that even if there was a con-

version it was subsequently ratified. The appellant made no requests to charge as to the defense of ratification. He assigned as error three excerpts from the charge upon this subject. In brief and argument, however, these assignments of error were abandoned. So that as the case is presented before us, no error is claimed by the appellant in the instructions of the court upon the defense of ratification. Upon this defense the trial court submitted to the jury an interrogatory as follows: "Did Moore at the stockholders' meeting on February 23d, 1932, ratify and approve the action taken by the directors on May 11th, 1931," to which the jury answered, "Yes." From this it is apparent that the jury found this issue in favor of the defendant, and its finding upon this issue disposes of the case. Even if error were found in the instructions of the court upon other issues, it would not constitute reversible error where the verdict of the jury was upon an issue in the submission of which no error occurred. *Altieri* v. *Peattie Motors, Inc.,* 121 Conn. 316, 320, 185 Atl. 75; *Spring* v. *Nagle,* 104 Conn. 23, 28, 131 Atl. 744; *Barbieri* v. *Pandisco,* 116 Conn. 48, 53, 163 Atl. 469. It is unnecessary to consider those assignments of error directed to the instructions of the court upon the third defense based on estoppel.

There is no error.

In this opinion the other judges concurred.