CATHERINE DEVITT *v.* JOHN C. MANULIK

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

658

Argued December 13, 1978—decision released February 27, 1979

*Anthony J. Lasala,* with whom was *David M. Reilly, Jr.,* for the appellant (plaintiff).

*John J. Resnik,* with whom, on the brief, was *David A. Sweeny,* for the appellee (defendant).

COTTER, C. J.   The plaintiff brought this action against her brother, the defendant, claiming damages for the conversion of a savings bank passbook allegedly belonging to her.  From a judgment rendered for the defendant, the plaintiff has appealed to this court.

The finding, as corrected to include relevant facts which a review of the parties' joint appendix reveals were admitted by the defendant, discloses the following:   In 1941, John Manulik, Sr., the parties' father, opened a savings account in the Connecticut Savings Bank of New Haven.  On January 16, 1967, he changed the account to read "John Manulik or Catherine M. Devitt" so that the funds contained therein were payable to either of them or to the

survivor. The plaintiff's father retained possession of the passbook until his death on January 30, 1969, and the plaintiff made no withdrawals from the account during that period. Following her father's death, the plaintiff had possession of the passbook in question which, at that time, contained a balance of $7907.99.

Thereafter, on April 1, 1969, the plaintiff closed the account and, with those funds, opened a new survivorship account in her name and in the name of the defendant. The defendant's name was added to the plaintiff's account solely for the purpose of allowing either the plaintiff or the defendant to withdraw money needed to provide for their ailing mother. At the time the joint account was created, the defendant neither believed the money was his, nor understood the creation of the account to be a gift from the plaintiff. In fact, the defendant admitted at trial that the plaintiff had not disclosed she was making a gift of the passbook when the account was opened. Moreover, although the court found that the passbook was "kept" at the defendant's home,[1] circumstances as to the manner in which he may have obtained possession were never established.

In any event, it is undisputed that, after their mother's death, the plaintiff and defendant went to the office of the probate judge for West Haven to discuss the preparation of forms relating to the succession tax return for their mother's estate and

---

[1] We note, in passing, that this finding of the trial court appears to contradict directly the memorandum of decision which states that at all times between the father's death and May 11, 1970, the plaintiff had possession of the passbook. The facts contained in the finding, however, must control in this situation. *Morris* v. *Morris,* 132 Conn. 188, 190, 43 A.2d 463.

presented him with the passbook in question. Following the judge's review of all the documents, the defendant took the passbook and put it in his pocket. On the next day, the defendant withdrew the money from that account, which contained at that time $5826.71, and transferred that amount to his own account where it has since remained.

On the basis of the above, the plaintiff brought the present action for conversion seeking $6000 in compensatory damages and $3000 in exemplary damages. Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. *Moore* v. *Waterbury Tool Co.,* 124 Conn. 201, 209, 199 A. 97. " 'It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm. Pollock's Law of Torts, p. 290.' *Gilbert* v. *Walker,* 64 Conn. 390, 394, 30 A. 132." *VanDerlip* v. *VanDerlip,* 149 Conn. 285, 289, 179 A.2d 619; 18 Am. Jur. 2d, Conversion § 1. Although proof of absolute and unqualified title is, of course, sufficient, proof of an immediate right to possession at the time of conversion is all that is required in the way of title or possession to enable the plaintiff to recover. *Healey* v. *Flammia,* 96 Conn. 233, 235, 113 A. 449; *Barker* v. *Lewis Storage & Transfer Co.,* 79 Conn. 342, 345, 65 A. 143.

The defendant claims that the savings account funds, which originally were in the father's name, did not accrue to the plaintiff after their father's

death since there was no intention by the father to make a gift to her. Such an assertion is without merit in view of the provisions of § 36-3 of the General Statutes as they existed at the time. The plaintiff was a surviving codepositor on the joint account with her father. In the absence of fraud or undue influence, which the defendant does not claim in the present case, § 36-3 at that time gave to the survivor an irrebuttable presumption of ownership in such funds. *Grodzicki* v. *Grodzicki*, 154 Conn. 456, 462, 226 A.2d 656. See § 36-3 as quoted in *Grodzicki*, pp. 460–61.[2] Upon the death of her father, therefore, the plaintiff acquired title to the savings account in question.

Having acquired sole title to the funds, however, the plaintiff thereafter closed that account in 1969, and opened a new survivorship account in her name and that of the defendant. The alleged conversion of those funds by the defendant took place after the establishment of that new account and during the plaintiff's lifetime.

General Statutes § 36-3, which, at the time in question, established the plaintiff's sole right to ownership of the funds following the death of her father,

[2] In 1971, the legislature amended § 36-3 through the passage of Public Act No. 417. The following quote from § 36-3 in its present form indicates the relevant changes: "The making of a deposit or issuance of an account in such form shall, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, be prima facie evidence, in any action or proceeding respecting the ownership of, or the enforcement of the obligation created or represented by, such deposit or account, of the intention of all of the named owners thereof to vest title to such deposit or account, including all additions and increments thereto, in such survivor or survivors." Since the 1971 amendments do not apply to any accounts where an owner died before October 1, 1971, or to any action pending on that date; General Statutes § 36-3 (2); the above-mentioned statutory changes are inapplicable to the present litigation.

in no way affected the inter vivos interests of the parties in the second survivorship account which the plaintiff created. " '[A]lthough the survivorship question is settled [by the statute] . . . the question of the donee's inter vivos interests is not answered, and the courts must once again look to their common law.' Comment, 'Property—Joint Bank Accounts— The Donee's Inter Vivos Interest,' 60 Mich. L. Rev. 972, 981; see Kepner, 'Five More Years of the Joint Bank Account Muddle,' 26 U. Chi. L. Rev. 376, 396, 397." *Grodzicki* v. *Grodzicki,* supra, 462; see *Sadofski* v. *Williams,* 60 N.J. 385, 393–94, 290 A.2d 143. The defendant does not claim that the evidence presented at trial demonstrated that the creation of the joint account constituted a valid gift inter vivos from the plaintiff. In fact, as noted above, the defendant's testimony directly contradicted such a claim. Rather, the thrust of the defendant's case was that the funds in question never vested solely in the plaintiff after the father's death. As we have indicated, however, the provisions of General Statutes § 36-3 in effect at the time dispose of such an argument under the circumstances presented.

To succeed in her suit for conversion, the plaintiff was required to allege and prove legal ownership or the immediate superior right of possession to the passbook in question and that the defendant exercised unauthorized dominion over the passbook to the exclusion of the plaintiff's rights. *Healey* v. *Flammia,* supra; *Independence Discount Corporation* v. *Bressner,* 47 App. Div. 2d 756, 365 N.Y.S.2d 44; Wright & Fitzgerald, Conn. Law of Torts (2d Ed.) § 25; 18 Am. Jur. 2d, Conversion § 1. The plaintiff satisfied that burden by establishing that she never intended the creation of the survivorship account with the defendant to constitute a gift of

those funds to which she had sole title. Although the mere creation of the joint account provided some evidence of an intent to make a gift, it was by no means conclusive. *Bachmann* v. *Reardon,* 138 Conn. 665, 668, 88 A.2d 391. In the absence of facts establishing the plaintiff's donative intent as well as a delivery of possession of the passbook to the defendant, the finding cannot support a conclusion that there was a valid gift inter vivos. See *Kukanskis* v. *Jasut,* 169 Conn. 29, 34–35, 362 A.2d 898; *Fasano* v. *Meliso,* 146 Conn. 496, 502, 152 A.2d 512. The court's conclusion that the plaintiff failed to prove all the elements of conversion was, therefore, erroneous. See *Grodzicki* v. *Grodzicki,* 154 Conn. 456, 463, 226 A.2d 656.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in the sum of $5826.71 plus interest from May 11, 1970.[3]

In this opinion the other judges concurred.

---

[3] In view of the evidence presented, the plaintiff's request for punitive damages cannot be sustained. "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825; *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 128, 222 A.2d 220." *Vandersluis* v. *Weil,* 176 Conn. 353, 407 A.2d 982.