[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in six counts — conversion, breach of contract, fraud, constructive trust, intentional infliction of emotional distress, and negligent infliction of emotional distress — that was tried to the court on August 4 and 5, 1993. At the court's request, counsel filed briefs on August 20, 1993. The court finds for the plaintiff on the following grounds: conversion, constructive trust, and negligent infliction of emotional distress.
The court makes the following findings of fact, crediting the testimony of Alice Wroblew, William Thompson, Jr., Susan Thompson, and Joan Kopin fully and the testimony of Bryan Thompson and Kathleen Thompson in part. The court does not credit the testimony of the remaining witnesses.
The plaintiff Alice Wroblew is an 85 year old woman who completed three years of high school. She was married for 37 years CT Page 9654 to William Golden; they had no children. After Golden's death, she married Anthony Wroblew, who died in 1987.
Although Mrs. Wroblew had no children of her own, she took in and raised her sister's daughter, the defendant Shirley Thompson. Mrs. Wroblew spent fourteen years raising Shirley, giving up her job to do so. She treated Shirley like a daughter and, when Shirley married the defendant William Thompson and had children, she treated Shirley's children like grandchildren. Indeed, Shirley Thompson testified that she and Mrs. Wroblew were as close as a mother and daughter. Likewise, William Thompson, Sr., all the children and their spouses testified to having a close personal relationship with Mrs. Wroblew.
The Thompsons lived in a house that Mrs. Wroblew and her husband had purchased for their sake, paying nominal rent at first until Mrs. Wroblew gave the house to Shirley. Over the years, Mrs. Wroblew gave gifts to Shirley and her family, mostly in cash. On one occasion, she gave the Thompsons $9,000 for a driveway and on another occasion she gave Shirley $12,000 to divide evenly among the children. None of these gifts came with any conditions.
In 1988, a year after Anthony Wroblew died, Mrs. Wroblew returned to Connecticut from Florida where she had lived since 1976. During the next year she moved frequently, finally settling in an apartment in Hamden in June 1989. She enjoyed a good relationship with the Thompsons and their children during this time and saw them frequently. During the spring of 1990, Mrs. Wroblew began to consider returning to Florida; however, according to Susan Thompson, she was apparently discouraged by Shirley. In June 1990, she decided to try to get a place in a senior citizen's home in North Haven and devised a plan that she believed would help her get into the home without waiting several years.
At the time, Mrs. Wroblew made her own decisions about her money but Shirley's husband William helped her with her taxes. She discussed her plan with him and he both agreed with it and approved it. The plan was as follows: Mrs. Wroblew had $100,000 in maturing certificates of deposit which listed the Thompsons and their children as beneficiaries in the event of her death. Mrs. Wroblew decided to divide the $100,000 by ten, giving $10,000 to Shirley, William, their five children and three daughters-in-law[1] with the understanding that they were to invest the money in their own names in six month certificates of deposit and name her as beneficiary on the account in the event of death. Furthermore, while they could CT Page 9655 use any interest earned they were not to touch the principal and they were to return the money to Mrs. Wroblew when she needed it.
Mrs. Wroblew discussed these terms with Shirley and William Thompson, Sr. and told them to tell the others what she wanted done. Shirley assured Mrs. Wroblew that she shouldn't worry and if she needed the money she could get it back at any time. Likewise, William told Mrs. Wroblew that he would follow her instructions and pass them on to the children.
On June 14, 1990 and June 21, 1990, as her certificates of deposit matured, Mrs. Wroblew went to the bank and withdrew the funds in check form. She spoke with Joan Kopin, a bank employee, who questioned her plan. Apparently concerned, Ms. Kopin asked Mrs. Wroblew if she trusted her relatives and Mrs. Wroblew indicated that she did.
Mrs. Wroblew distributed certain checks to William Thompson, Sr. for redistribution to the others, repeating her specific instructions. William Thompson, Jr. and his wife Susan received their checks directly from Mrs. Wroblew who gave them the same instructions she had given to Shirley and William Thompson, Sr.
The ten recipients took Mrs. Wroblew's $10,000 and each opened a certificate of deposit which named her, in some form, as beneficiary. Although some of the certificates of deposit were initially for three months, those were rolled over in September 1990 for another three month period; the remainder were opened for six months according to Mrs. Wroblew's instructions.[2]
Sometime in August 1990, Mrs. Wroblew changed her mind about the senior citizen's home and decided to move to Florida with William Thompson, Jr. [hereafter "Bill"] and his wife Susan. The three of them left for Florida at the end of September 1990. Shortly thereafter, Bill and Susan returned to Connecticut for a visit and told the other family members that Mrs. Wroblew would be asking for her money back to use to purchase a house in Florida in which they would all live.
In December 1990, Mrs. Wroblew decided that she wanted her money back and called Shirley shortly before the time the certificates of deposit would be maturing to tell her that she needed the money. She also had telephone conversations with Bryan, James and David asking them to return her money. These telephone calls ended with Mrs. Wroblew becoming upset because of their CT Page 9656 refusals to return the money. No money was returned to her as result of the telephone calls. Mrs. Wroblew also wrote letters to the Thompsons in Connecticut in an attempt to get the money back, but it was not returned.
Bryan Thompson testified that he originally agreed to give the money back to Mrs. Wroblew but changed his mind when he learned from his brother, Bill, that she wanted the money back to buy a house for Bill and Susan. Shirley Thompson testified that she didn't feel that Mrs. Wroblew was treating all her children evenly because the money would benefit Bill and Susan. Shirley and William, Sr. testified that they felt Mrs. Wroblew was asking for "our money" back. According to Kathleen Thompson, there were many family meetings in Connecticut on the subject of returning the money.
In December 1990, when all the certificates of deposit matured, Shirley and William, Sr. took the funds and placed them in their joint account, David put the money in a certificate of deposit in his own name and when it matured in his personal checking/savings account, Patricia rolled the funds over into a certificate in her own name and later loaned some of the money to her sister, James took $5,000 and used it to buy a used car and put the balance in a joint savings account with his wife, Cheryl put the funds in a certificate in the name of herself and her husband, Kathleen put the funds in her own savings account and Bryan put the funds in a certificate in his own name which he has continued to roll over.
After December 1990, there was a noticeable change in Mrs. Wroblew. Mrs. Wroblew testified that she was heartbroken over the defendants' refusal to return her money, it caused her a lot of agony, she lost sleep and cried a lot. Bill Thompson testified that she spent time crying in her room, was despondent and threatened suicide over the defendants' refusal to return her money. Susan Thompson testified that after December 1990 Mrs. Wroblew was despondent, she wouldn't eat, and spent time just sitting in a dark room, and that she still continues to behave this way on occasion. Both Bill and Susan testified that Mrs. Wroblew often stated words to the effect of "How could they do this to me?"
I. Conversion
To determine if there has been a conversion, the controlling issue is whether Mrs. Wroblew made a gift of her money to the CT Page 9657 defendants. Genuario v. Finkler, 136 Conn. 500, 501, 72 A.2d 57
(1950). "To constitute a valid gift inter vivos of personal property, there must be not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately. Guinan's Appeal, 70 Conn. 342, 347,39 A. 482. . . . The question whether . . . it was the intention of the claimed donor immediately to transfer title . . . is one of fact for the determination of the trier. Bachmann v. Reardon, 138 Conn. 665,667, 88 A.2d 391." Kukanskis v. Jasut, 169 Conn. 29, 34-35,362 A.2d 898 (1975). "To make a valid gift inter vivos, the donor must part with control of the property with an intent that title shall pass immediately and irrevocably to the donee. (emphasis supplied). [citations omitted]. The burden of proving the essential elements of a valid gift rests upon the party claiming the gift." Kriedel v. Krampitz, 137 Conn. 532, 534, 79 A.2d 181
(1951). See Bergen v. Bergen, 177 Conn. 53, 56-57, 411 A.2d 22
(1979).
Mrs. Wroblew's intentions can be ascertained from her words and her actions. Unlike prior occasions when she had given unconditional gifts of money to the Thompsons, on this occasion there were specific conditions attached to the transfer of the funds regarding their placement in certificates of deposit naming Mrs. Wroblew as beneficiary and the return of the money upon her request. Clearly, Mrs. Wroblew intended that if any of the Thompsons died during the time they held her money the funds were to revert to her rather than belong to their individual estates. Just as clearly, she intended for the Thompsons to return her money upon her request. Furthermore, she believed that she had an agreement with the Thompsons to this effect. Therefore, Mrs. Wroblew did not part with control of her money with the intent that title should pass immediately and irrevocably to the Thompsons. The defendants have failed to meet their burden of proving that Mrs. Wroblew made a valid inter vivos gift to each of them in the amount of $10,000.
"Money can clearly be subject to conversion. See Devitt v. Manulik, 176 Conn. 657, 662-63, 410 A.2d 465 (1979) (recovery of money wrongfully taken from joint survivorship bank account); Dunham v. Cox, 81 Conn. 268, 270-71, 70 A. 1033 (1908) (recovery of a sum of money entrusted to the defendant for payment to a third person); Shelby Mutual Ins. Co. v. Della Ghelfa, 3 Conn. App. 432,445, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52
(1986) (recovery by insurer from insured's attorney pursuant to General Statutes [Rev. to 1979] 38-325 [b]); see also Unigard Ins. CT Page 9658 Co. v. Tremont, 37 Conn. Sup. 596, 599-600, 430 A.2d 30 (1981); State v. Blawie, 31 Conn. Sup. 552, 556-57, 334 A.2d 484 (1974)." Omar v. Mezvinsky, 13 Conn. App. 533, 536, 537 A.2d 1238 (1988).
"Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. Moore v. Waterbury Tool Co., 124 Conn. 201, 209, 199 A. 97. "`It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm. Pollock's Law of Torts, p. 290." Gilbert v. Walker, 64 Conn. 390, 394, 30 A. 132.' VanDerlip v. VanDerlip,149 Conn. 285, 289, 179 A.2d 619; 18 Am.Jur.2d, Conversion 1." Devitt v. Manulik, 176 Conn. 657, 660, 410 A.2d 465 (1979). See Falker v. Sampieri, 190 Conn. 412, 419, 461 A.2d 681 (1983); Coleman v. Francis, 102 Conn. 612, 129 A. 718 (1925); Luciani v. Stop Shop Co., 15 Conn. App. 407, 409-413, 544 A.2d 1238 (1988).
"Fraud is not a necessary part of conversion. Conversion occurs when one assumes and exercises the right of ownership over property belonging to another, without authorization and to the exclusion of the owner's rights. Falker v. Samperi, 190 Conn. 412,419, 461 A.2d 681 (1983). The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own. Luciani v. Stop Shop Co., 15 Conn. App. 407, 411-12, 544 A.2d 1239, cert. denied, 209 Conn. 809, 548 A.2d 437 (1988)." Plikus v. Plikus,26 Conn. App. 174, 180, 599 A.2d 392 (1991).
In December 1990 when Mrs. Wroblew demanded that the defendants return her funds and they refused her demand, instead putting the funds to their own use contrary to her instructions and intentions, the defendants engaged in unauthorized acts over Mrs. Wroblew's money with the intention of permanently depriving her of the property and to her clear harm. Even if the defendants reasonably believed that the money was theirs, the facts clearly establish that Mrs. Wroblew never intended to give them the money at the time she transferred the funds and that they therefore exercised dominion and control over property of another, without authorization and to the exclusion of her rights. Accordingly, the court finds that the defendants have converted the plaintiff's money. CT Page 9659
II. Constructive Trust
"The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. 5 Scott, op. cit. 462. Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. [Citations omitted]." Cohen v. Cohen, 182 Conn. 193, 203, 438 A.2d 55 (1980). Since the imposition of a constructive trust is an equitable remedy, the court must examine all the relevant, surrounding circumstances in balancing the equities. See e.g. Banthin v. Shoreline plumbing 
Heating Supply, 30 Conn. App. 637, 640, 621 A.2d 769 (1993).
"The imposition of a constructive trust is not limited to cases involving undue influence. For example, a constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form, or when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Spatola v. Spatola, 4 Conn. App. 79, 81,492 A.2d 518 (1985)." Colonial Bank Trust Co. v. Matoff,18 Conn. App. 20, 29, 556 A.2d 619 (1989).
The Matoff case is closely analogous to the present case. There, an 85 year old gentlemen transferred all his money to his neighbors, Monroe and Matoff, with the understanding that it would be used for his care and support during his life and any balance would go to his neighbors after his death. Monroe, however, appropriated all the funds to himself. The trial court in Matoff found that a trust had been created at the time the funds were delivered to Monroe and Matoff and that Monroe had violated the terms of that trust. Id. at 25. The trial court further concluded, in a finding that the Appellate Court endorsed, that even if a trust had not been created the circumstances of the transfer required a finding of constructive trust. Id. at 28.
Likewise in this case, the credible evidence leads to the conclusion that Mrs. Wroblew did not intend to give her funds to the defendants but rather sought to have them hold her funds in their names for the purposes of gaining entry to a senior citizen's home, with the clear understanding that the fund were to be returned to Mrs. Wroblew when she asked. The court need not determine whether this plan was well or ill-advised[3], but it was CT Page 9660 surely concurred in, if not actively encouraged, by William Thompson, Sr., Shirley Thompson and their children.
Moreover, the Thompsons stood in precisely the close personal relationship of confidence with Mrs. Wroblew that our courts have recognized as a significant element of a constructive trust, Hieble v. Hieble, 164 Conn. 56, 62, 316 A.2d 777 (1972), proof of which shifts the burden to the defendants of showing fair dealing or the absence of undue influence by clear and convincing evidence. Cooper v. Cavallaro, 2 Conn. App. 622, 626, 481 A.2d 101 (1984). Ms. Kopin's testimony amply demonstrates the absolute confidence in which Mrs. Wroblew held the defendants. Indeed, there is clear and convincing evidence before the court of a relationship between Mrs. Wroblew and all the defendants "in which `there is ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration.' Worobey v. Sibieth,136 Conn. 352, 359, 71 A.2d 80 [1949]." Zack v. Guzauskas,171 Conn. 98, 104, 368 A.2d 193 (1976).
Finally, the defendants' conduct in this case was consistent with the promise that Mrs. Wroblew had requested they all make through instructions to William, Sr. and Shirley. They all opened certificates of deposit, naming Mrs. Wroblew as beneficiary, and kept the funds in certificates of deposit for six months, precisely as Mrs. Wroblew had directed. Their absolute refusal to return the funds came only after they learned the money was going to be used to buy a house in which Mrs. Wroblew would live with Bill and Susan Thompson and followed many family meetings on the subject.
In summary, the court finds that there was a special relationship of confidence between Mrs. Wroblew and the defendants, that Mrs. Wroblew did not intend to give her money to the defendants but rather for them to hold it for her and return it upon her request, that the defendants failed to honor Mrs. Wroblew's request for the return of the money, that the defendants then used Mrs. Wroblew's money for their own benefit and that they were thereby unjustly enriched. Accordingly, a constructive trust, which is "the formula through which the conscience of equity finds expression," Beatty v. Guggenheim Exploration Co., 225 N.Y. 380,386, 122 N.E. 378 (1919) (Cardozo, J.) as quoted in Cohen v. Cohen,182 Conn. at 203, is imposed in this case.
III. Negligent Infliction of Emotional Distress CT Page 9661
Our Supreme Court has allowed recovery for unintentionally caused emotional distress in the context of fraud actions, Kilduff v. Adams. Inc., 219 Conn. 314, 324 -26, 593 A.2d 478 (1991); actions brought pursuant to Conn. Gen. Stat. 31-290a(b) (wrongful discharge), Ford v. Blue Cross Blue Shield of Connecticut, Inc.,216 Conn. 40, 62-63, 578 A.2d 1054 (1990); where the defendant failed to enable the plaintiff to continue insurance coverage, Buckman v. People Express. Inc., 205 Conn. 166, 173-74,530 A.2d 596 (1987); and where there was unreasonable conduct of an employer in discharging an employee, Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). The plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, it were caused, might result in illness or bodily harm." (Emphasis added.) [citations omitted]." Morris v. Hartford Courant Co., 200 Conn. 676, 683, 513 A.2d 66
(1986). This case likewise appears to be an appropriate one for the recovery of damages for unintentionally-caused emotional distress.
In this case the plaintiff has pleaded and proved, among other things, that as a result of the defendants' conversion of her funds and other negligent actions, she suffered anxiety, nervousness, loss of appetite and an inability to concentrate on her daily activities. Based on the evidence presented, the court concludes that the plaintiff has established that the defendants should have realized that their conduct in converting Mrs. Wroblew's funds involved an unreasonable risk of causing her emotional distress, that their actions were the proximate cause of the emotional distress that Mrs. Wroblew suffered, and that the emotional distress that she suffered was a reasonably foreseeable consequence of the defendants' actions towards her.
The defendants knew, or should have known, that Mrs. Wroblew, their elderly aunt, was entrusting them with the greater portion of her life savings based on strong feelings of trust and confidence developed over a lifetime relationship with them. The defendants further knew, or should have known, that Mrs. Wroblew desired to return to Florida, where she had lived for a considerable period of time and also desired to live in a manner where she could maintain her independence. By refusing to return Mrs. Wroblew's money, based on apparent animosity not towards Mrs. Wroblew but towards Bill and Susan Thompson, the defendants knew, or should have known, that they were potentially depriving Mrs. Wroblew of an opportunity to live out her years independently in a desired location. Such CT Page 9662 actions clearly carried with them the great risk of causing Mrs. Wroblew the emotional distress that she suffered, including despondency, threats of suicide and loss of appetite, which could result either in illness or bodily harm to a woman in her eighties.
IV. Conclusion
In conclusion, the court finds for the plaintiff on the first count (conversion) and the fourth count (constructive trust). The defendants are each directed to pay to the plaintiff the amount of $10,000 plus statutory interest pursuant to Conn. Gen. Stat. 37-3a
in the amount of ten per cent a year to be accrued from the dates in December 1990 that the certificates of deposit became due. Further, the court finds for the plaintiff on the sixth count (negligent infliction of emotional distress) and finds reasonable damages to be $40,000 for which the defendants are held jointly and severally liable. The court finds that the plaintiff has failed to meet her burden with respect to the remaining counts and judgment on those counts is entered in favor of the defendants.
LINDA K. LAGER, JUDGE