[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This litigation was generated by the defendant's alleged conversion of a certain painting of the Grand Canyon by Arthur Wesley Dow (hereinafter referred to as "the painting").
The defendant (hereinafter "Fagan") owned and operated a business which purchased and sold secondhand furniture, antiques, collectibles and works of art, among other things. The plaintiff (hereinafter "Merritt") had met Pagan on several occasions as the result of the location of his business CT Page 6300 near a business owned by the plaintiff's niece. She and her niece had established a casual relationship with him, and he would frequently visit the niece's shop and the niece and her aunt would visit his. Merritt ultimately began to trust Pagan and to value his opinion with regard to items of furniture and antiques. On or about February 16, 1998, she was in the process of moving from her home to a condominium and invited Pagan to her home for the purpose of obtaining his opinion on the value of several items. Pagan and Merritt's niece collected various things and created a list of items that were to be taken by him that day. The painting was not on that list.
After the niece left, Fagan returned from the attic with the painting and asked the plaintiff if he could purchase it. She declined that offer. At that point, he offered to take the painting and have it appraised for her. They agreed that as soon as the appraisal was received, he would return the painting and provide a copy of the appraisal to her. She made many inquiries, as did her niece, but Pagan never informed them of the location of the painting or its value. Ultimately, she learned that he had taken the painting to the craftsman auction facility in Pittsfield, Massachusetts, and it had been auctioned for the figure of one hundred sixty-five thousand ($165,000) dollars to the Spanierman Gallery of New York. Pagan retained the net proceeds from that sale which amounted to one hundred fifty thousand ($150,000) dollars.
This action recited a return day of December 14, 1999, and the defendant filed an appearance through counsel on January 3, 2000. On January 13, 2000, he filed a request to revise. On September 29, 2000, he filed a motion for a protective order. On October 2, 2000, he filed an objection to a request for discovery. On October 2, 2000, he also filed a motion for sanctions. Despite all of this activity, he permitted himself to suffer a motion for default for failure to plead on October 22, 2001. That default was never vacated or set aside.
The activity on the file continued with a motion to strike filed by the defendant on November 7, 2001; a motion for continuance of a scheduled case management event on February 11 as well; an answer and special defense on February 26, 2002; a motion to open the default on February 26, 2002; and finally, a motion to preclude expert testimony on March 4, 2002. His only attempt to set aside the motion for default was not filed nor was a responsive pleading filed within the four (4) month period and was denied. The case thereafter proceeded as a Hearing in Damages. Despite the fact that no notice of defenses was ever filed in accordance with § 17-34 of the Practice Book, the defendant was given a wide latitude with respect to his participation in the hearing and in such defenses as he believed existed to the litigation, as a matter of CT Page 6301 courtesy and certainly not as a matter of right.
On November 28, 1967, Walter Gordon Merritt executed a document purporting to be, and what in fact was, his last will and testament. In Article FOURTH, appearing on pages 4 and 5 of that document, he devised certain property to his wife, the plaintiff, Mary Shawah Merritt, in the following language. "If my said wife, MARY SHAWAH MERRITT, survives me, I give and devise to her TO HAVE AND TO HOLD during her life, the real property comprising approximately thirty-two acres of land situated in the Town of New Fairfield, Connecticut, and hereinafter more particularly described, together with the two dwelling houses (including my residence) and all other buildings and improvements erected thereon, and all tangible personal property of every description customarily used in connection therewith, including household furnishings but excepting the items specifically bequeathed by me to others in Article SEVENTH. . . ." The will was duly probated and the bequests thereunder distributed. The plaintiff testified, and credibly so, that she had seen the inventory of the estate and that the painting which is the subject matter of this litigation was never mentioned nor contained in said inventory. The court finds that this omission or lack of inclusion is persuasive evidence that this particular item of personal property passed directly to the plaintiff free from the burden of the life estate limitation.
For purposes of discussion, the court finds the clause "and all tangible personal property of every description customarily used inconnection therewith . . ." to be somewhat intriguing. It is difficult to comprehend how the painting in issue may be said to be USED in connection therewith. The word "use" certainly indicates, at least to this court, something other than a decoration or art work.
The defendant has offered extensive argument on the plaintiffs standing in this particular instance, the measure of damages, and the issue of the imposition of a life estate on the painting. Much of the standing and value authority offered by Pagan is derived from condemnation cases. Since the court has found the testimony of the plaintiff to be quite credible on the question of her absolute ownership of the painting, the issue of standing presented by him and the measure of damages presented by him is found to be inapposite to this factual predicate.
The first of the four count complaint, as amended, sounds in conversion. Her prayer for relief recites a claim for treble damages under § 52-564 of the General Statutes. With the exception of the claim for relief, no invocation of that statute appears in the first count. Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. Devitt v. Manulik, 176 Conn. 657, 660 (1979); Moore v.CT Page 6302Waterbury Tool Co., 124 Conn. 201, 209 (1938). To establish a prima facie case of conversion, a plaintiff must demonstrate that (1) the painting delivered to Pagan belonged to the plaintiff, (2) that the defendant deprived the plaintiff of her painting for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the plaintiff. Amica Mutual Insurance Co. v.Jacomini, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 552416 (May 20, 1997, Allen, J.T.R.) (1997 Conn. Sup. 5194). The credibility of witnesses and the weight to be accorded their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. Krawiec v. Blake Manor Development Corporation,26 Conn. App. 601-608 (1992). In order for the plaintiff to prevail on a cause of action in conversion, the court must find by clear and convincing evidence that the defendant had converted the plaintiffs property. Suarez-Negrete v. Trotta, 47 Conn. App. 517, 518 (1998); "[C]lear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, as where this high standard is required to sustain claims which have serious consequences or harsh or far-reaching effects on individuals, to prove willful, wrongful and unlawful acts, to justify an exceptional judicial remedy, or to circumvent established legal safeguards. . . ." Schaffer v. Lindy, 8 Conn. App. 96, 104-05 (1986).
The court heard evidence and to reiterate has found that the plaintiff was the owner of the picture absolutely and free from the burden of a life estate. It further finds that the defendant deprived the owner of the painting for an indefinite period of time; that the defendant's conduct was unauthorized as he received the painting under the guise of having it appraised, and, by implication at least, promising to return it to the plaintiff. Finally, the plaintiff must prove by the same standard that she was harmed by the conduct of the defendant.
With respect to the value of the painting, our Supreme Court has held that in the absence of a contract which fixes the terms of recovery in the event of conversion or loss, the market value of the object in issue shall serve to establish the measure of damages with the addition of applicable interest. Griffin v. Nationwide Moving Storage Company,187 Conn. 405, 419-420 (1982); Barron v. Benton Auto Body, Inc., Superior Court, judicial district of Hartford, Docket No. 573293 (December 21, 2000, Rubinow, J.) (2000 Conn. Sup. 15663, 15690). The evidence adduced at trial established the fact that Pagan sold the painting for the sum (net) of one hundred fifty thousand ($150,000) dollars. The plaintiff introduced evidence that Pagan sold the property at auction at the Craftsman Auction in Pittsfield, Massachusetts to the Spanierman Gallery and that he received the full payment less the auction house commission CT Page 6303 therefor. She also introduced the Craftsman Auction catalog sale number 8, May 16, 1998, and the related price lists. While the catalog was an exhibit for identification only, there was substantial testimony about its contents in general and the painting in particular. The catalog apparently explains the details surrounding the specific auction and displayed the painting as an item for sale. The price list allegedly set forth all items contained in the catalog that were to be sold at that particular auction and the purchase price of each. The price for the Arthur Wesley Dow painting of one hundred fifty thousand ($150,000) dollars was said to be the highest ticket price at that particular auction.
The plaintiff did not plead § 52-564 of the General Statutes in her claim for conversion and her further claim for treble damages. The statute recites that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." On first blush it might seem that failure to specifically identify the statute in the complaint is fatal to the claim. See § 10-3 of the Practice Book. Our Supreme Court, however, has interpreted the ordinary mandate of the word "shall" as directory on the subject as opposed to mandatory. Crisculo v. Mauro Motors, Inc.,58 Conn. App. 537, 545 (2000); Skakel v. Benedict, 54 Conn. App. 663, 684
(1999) and the cases therein cited. In view of the Supreme Court's direction on the issue, the court will look to the content of the pleading itself to determine whether or not the plaintiff has properly invoked the statute.
The word "steals" as used in the General Statutes is synonymous with the definition of larceny under § 53a-119 of the General Statutes.Lauder v. Peck, 11 Conn. App. 161, 165 (1987). To establish a prima facie case of statutory theft, the plaintiff has to demonstrate that (1) the painting belonged to the plaintiff, (2) that the defendant intentionally deprived the plaintiff of the painting, and that the defendant's conduct was unauthorized. Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303,309 (1993). The pleading discloses the failure to allege that Fagan intentionally deprived Merritt of her painting or that he engaged in some other form of wanton misconduct (i.e. conversion accompanied by false pretenses or an intent to defraud) which would entitle her to treble damages. The court is not able to find by clear and convincing evidence much less a preponderance of the evidence, were that the standard, that Merritt can prevail on this statutory allegation.
Despite Merritt's inability to prevail under the statute and its treble damage remedy, the court finds that Fagan is responsible for common law conversion of the painting. To reiterate, conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to CT Page 6304 another to the exclusion of the owner's rights. Discover Leasing, Inc.v. Murphy, supra. The elements of the cause of action are essentially the same as those required under § 52-564 of the General Statutes. The difference obviously is the necessity for a theft or larceny as requisites to such a crime. The evidence in the case indicated clearly that the painting belonged to the plaintiff, (2) that the defendant deprived the plaintiff of the painting for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the owner. The court is satisfied that these elements have clearly been met and that the plaintiff is entitled to prevail under the theory of common law conversion.
Fagan's act depriving the plaintiff of her property as of this writing may be said to be a permanent deprivation. He had no authority to sell the painting, having merely accepted it for purposes of an appraisal with the implication that it would be returned thereafter. By selling the painting for one hundred fifty thousand ($150,000) dollars from which the plaintiff received absolutely nothing, he has certainly harmed her.
It is generally acknowledged that the measure of damages in a conversion matter is the value of the goods at the time they were converted with interest from the date of the wrongful act. Plikus v.Plikus, 26 Conn. App. 176, 178 (1991); Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 419-20 (1982); Kuzemka v. Gregory,109 Conn. 117, 122 (1929). Our Supreme Court has held that in absence of a contract which fixes the terms of recovery in the event of conversion or loss, the market value of the object at issue shall serve to establish the measure of damages with the addition of applicable interest. Griffinv. Nationwide Moving Storage Co., supra. Barron v. Benton Auto Body,Inc., Superior Court, judicial district of Hartford, Docket No. 573293 (December 21, 2000, Rubniow, J.). The date of the conversion is found to be May 16, 1998 and the terminal date for the computation is March 5, 2002. The sale is sufficient evidence of the market value as of May 16, 1998.
Count two of the complaint alleges breach of contract between the parties and incorporates count one in its entirety as the factual underpinning for it. It alleges that Fagan requested Merritt's permission to again visit the attic in the house to see if there was anything else of interest at which time he found the painting. He wanted to take the painting but was denied permission. He offered to have it appraised for her and she entrusted it to him for the sole purpose of having it appraised. He agreed to act as her agent to protect and guard the painting on her behalf and to return the painting to her with the appraisal. It sets forth that he never returned the painting. She also utilizes the word "bailment" as an apparent identification of the relationship between CT Page 6305 the parties at that time. Arguably, it might be said that she has indeed pleaded a contract or raised an implied contract. The plaintiff has made a sufficient case on the theory of breach of contract to justify judgment on this count.
In the third count of her complaint, Merritt alleges a violation of the Connecticut Unfair Trade Practices Act under § 42-110b of the General Statutes. In determining whether a practice violates CUTPA our courts have adopted the criteria set forth in the "cigarette rule" announced by the federal trade commission for determining when a practice is unfair: (1) whether the practice without necessarily having been previously considered unlawful offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). This rule is announced for the first time in FTC v. Sperry Hutchinson Co., 405 U.S. 233,92 S.Ct. 898, 31 L.Ed. 170 (1972). All three criteria did not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Willow Springs Condominium Ass'n.,Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 43 (1998), citing therein, Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-106
(1992).
A violation of CUTPA may be established by showing either an actual deceptive practice or practice amounting to a violation of public policy. In addition, a party is not required to prove an intent to deceive to prevail under CUTPA. Normand Josef Enterprises v. Connecticut NationalBank, 230 Conn. 446, 522, 523 (1994); whether a practice is unfair and thus violates CUTPA is an issue of fact. Willow Springs CondominiumAssn., Inc. v. Seventh BRT Development Corp., supra; DeMotses v. LeonardSchwartz Nissan, Inc., 22 Conn. App. 464, 466 (1990).
There is a continuing split of authority in our courts as to whether CUTPA requires there be more than one allegation of wrongdoing. The majority of Superior Court decisions have held that a party need not allege more than a single act of misconduct to bring an action under CUTPA. See L. Suzio Concrete Co. v. Citizens Bank of Connecticut, Superior Court, judicial district of New Haven at New Haven, Docket No. CV97 0398079 (August 7, 1998, Silbert, J.); Masopust v. Citizens NationalBank, Superior Court, judicial district of Windham at Putnam, Docket No. 062846 (March 8, 2001, Foley, J.); see also Underwriters Support Group,Inc. v. Fortis, Superior Court, judicial district of New Britain at New Britain, Docket No. 487732 (May 7, 1999, Robinson, J.) (24 Conn.L.Rptr. CT Page 6306 488); Giacomo v. USFG Insurance, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 164760 (September 10, 1998,D'Andrea, J.); Abrams v. Riding High Dude Ranch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345046 (February 5, 1998, Skolnick, J.); Nygaard v. Metropolitan Property and Casualty Co., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 151924 (April 7, 1997, Karazin, J.); Lovick v. Nigro, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 542473 (February 24, 1997, Lager, J.); Roache v. Rogers, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 354114 (July 26, 1999, Skolnick, J.); Four Beaches Condominium v. W.C. BresciaPlumbing Heating, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 384124 (May 23, 1997; Licari, J.); Fielding v.Spinnato, Superior Court, judicial district of Judicial District of Middlesex at Middletown, Docket No. CV97 0081056 S (December 14, 2001,Shapiro, J.).
This court finds the above cited cases holding that a CUTPA violation can be based upon a single act of misconduct to be more persuasive than those requiring multiple acts and the reasoning supporting singular violations is adopted herein.
The taking of the painting purportedly for an appraisal and the return thereof, and the conversion; by the sale for one hundred fifty thousand ($150,000) dollars while deliberately failing to inform Merritt of the appraisal value, the sale and the retention of the sale price, clearly falls within an unfair deceptive act or practice within the meaning of the statute. It offends public policy and is immoral, unethical and oppressive as well as unscrupulous. Finally, it causes substantial harm to Merritt as his action were arising out of and in the course of his business and the deprivation of the proceeds of the sale provide one hundred fifty thousand manifestations of harm or injury to her as it were. Merritt has clearly established a violation of our CUTPA statutes and is entitled to be compensated for such a violation.
The defendant would attempt by the language of his brief to defend or mitigate the award of damages based upon the alleged settlement agreement. There was a piece of paper between the parties that contained certain terms and conditions that was indeed signed by the parties. This is not contradicted. However, the so-called agreement required further action by the parties thereunder to effectuate a complete contract. The factual underpinnings of the so-called agreement or contract are simply not there. There was no mutual assent or meeting of the minds as the case may be and therefore no binding agreement.
The plaintiff's last allegation is set forth in count four in her CT Page 6307 complaint and involves an allegation of negligent infliction of emotional distress. To prevail on this claim she must prove that the defendant should have realized that his conduct involved an unreasonable risk for causing emotional distress and that that distress if were caused might result in illness or bodily harm. Morris v. Hartford Courant Co.,200 Conn. 676, 683 (1986); Montinieri v. Southern New England TelephoneCo., 175 Conn. 337, 345 (1978). The specifications for her claim of negligent infliction of emotional distress are stated as failing to return the painting to Merritt, concealing the painting from Merritt, selling the painting at auction without Merritt's permission and by retaining the proceeds of the sale of Merritt's painting for himself. She goes on to recite that Fagan knew or should have known that his conduct involved an unreasonable risk of causing emotional and mental distress that in turn might have resulted in illness and bodily harm. The problem with this count, however, is that Fagan's actions herein were all unmistakenly, deliberate or intentional. The contradiction with negligence precludes her success on this count.
Finally, the court finds that Merritt is entitled to an award for damages for harm done to her as a result of Fagan's acts. That award is expressed as follows:
(1) she is awarded one hundred fifty thousand ($150,000) dollars for the conversion of her property;
(2) one hundred fifty thousand ($150,000) dollars for the CUTPA violation as punitive damages, interest of fifty-eight thousand ($58,000) dollars, counsel fees in the amount of thirty-seven thousand thirty ($37,030) dollars, which is found to be fair and reasonable for herself, her associate and for her paralegal, together with costs of suit.
Judgment may enter that Merritt recover the sum of three hundred ninety-five thousand thirty ($395,030) dollars of the defendant, together with costs of suit.
 ___________________ Moraghan, J.T.R.