[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE # 119
The plaintiffs, Cypriano Muniz and Mercedes Muniz, instituted this action against the defendants, Henry R. Kravis, Caroline Roehm (formerly Caroline Kravis), and Weatherstone Corporation, to recover damages they allegedly sustained as the result of the termination of their employment. In an eight count amended complaint, the plaintiffs allege claims for wrongful discharge, breach of contract, promissory estoppel, intentional infliction of emotional distress, negligent misrepresentation, fraudulent misrepresentation, wrongful ejectment, conversion and a violation of General Statutes Sec. 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The defendants now move to strike each count of the amended complaint.
The amended complaint alleges the following facts. The defendants Kravis and Roehm, both in their individual capacity and as officers of the defendant corporation, engage in the business of managing and maintaining premises located in Sharon, Connecticut for social and business purposes. As part of this business, the defendants employ individuals, such as the plaintiffs as a cook and butler, and provide employees the use and occupancy of apartments on the premises. The terms and conditions of the plaintiffs' employment provided compensation in the form of a salary and the creation of a tenancy in connection with a private apartment. The plaintiffs claim that at all times during the course of their employment, they performed their duties in a satisfactory manner.
In July 1993, an armed security guard working for the defendants delivered to the plaintiffs' apartment a notice that their employment was terminated effective immediately, and that they were to vacate the apartment in twenty-four hours. At the time this notice was given, the plaintiff Mercedes Muniz was travelling to Spain with her minor daughter for a planned vacation, and the plaintiff Cypriano Muniz was at the apartment convalescing from a scheduled medical surgery performed a day earlier. The plaintiffs allege that one month prior to their termination, the defendants induced them to believe that their jobs were secure. CT Page 10386
The defendants move to strike each count of the complaint and, in support of their motion, they filed a memorandum of law. The plaintiffs timely filed a memorandum in opposition, to which the defendants filed a reply memorandum.
DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them." Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). The court is to construe the facts alleged in a manner most favorable to the pleader. Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988). All well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. Amodio v. Cunningham, 182 Conn. 80, 82-83, 438 A.2d 6
(1989). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in pleadings." Mingachosv. CBS, Inc., supra, 196 Conn. 108. If the facts provable under the allegations would support a cause of action, the motion to strike must fail. Ferryman v. Groton, supra, 212 Conn. 142.
A motion to strike shall separately set forth each claim of insufficiency, distinctly specifying the reason or reasons for each claimed insufficiency; Practice Book Sec. 154; and shall be accompanied by a memorandum of law citing the legal authorities upon which the motion relies. Id., Sec. 155. The requirement of a memorandum of law does not dispense with Section 154's requirement that the reasons for the claimed pleading deficiency be specified in the motion itself. Blancato v. Feldspar, 203 Conn. 34, 44,522 A.2d 1235 (1987). In the present action, the defendants state in their motion that each count of the amended complaint fails to allege facts setting forth valid claims for relief, but the motion itself does not specify the grounds for the claimed insufficiencies. Instead, in their supporting memorandum of law, the defendants argue specific reasons why each count is legally insufficient. "A trial court, when ruling on a motion to strike, may consider only those grounds specifically enumerated in the motion and no others." Connecticut National Bank v. Machnik,9 CSCR 295 (February 9, 1994, Hurley, J.), citing Blancato v.Feldspar, supra, 203 Conn. 44. When the motion itself fails to specify the distinct reasons for the claimed insufficiency, it is "fatally defective" under Practice Book Sec. 154, notwithstanding CT Page 10387 the inclusion of such reasons in a supporting memorandum. Bouchardv. People's Bank, 219 Conn. 465, 468 n. 4, 594 A.2d 1 (1991). The court, however, may consider a motion that fails to specify the reasons for the deficiency when no objection has been raised to the form of the motion. Rosen v. Reale, 9 CSCR 176 (January 13, 1994, Hurley, J.); Pointer v. DiBona, 7 CSCR 707 (May 14, 1992, Austin, J.). Since the plaintiffs failed to object to the form of the defendants' motion, the court will consider the grounds stated in the defendants' memorandum of law.
 I.
The defendants move to strike the first count alleging wrongful discharge on the ground that the plaintiffs fail to allege that their discharge contravened public policy in that the alleged policy violations occurred after the plaintiffs' termination, and thus cannot be viewed as a basis for a wrongful discharge action. The plaintiffs contend that they have sufficiently alleged clear public policy violations in support of their wrongful discharge claim.
In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,427 A.2d 385 (1980), our Supreme Court carved out an exception to the employment-at-will rule where "a former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id., 475. "The public policy exception is based on the theory that the law should not allow employees to be fired for reasons that violate public policy, such as in retaliation for opposing an employer's illegal activities." 82 Am.Jur.2d Wrongful Discharge, Sec. 15.
In the first count, the plaintiffs allege violations of the public policies against engaging in conduct intended to cause emotional distress, deception, certain intentional torts and denial of due process of law rendering the plaintiffs homeless and without their personal effects and property. While the plaintiffs are correct that the public policy need not be embodied in a statute;Morris v. Hartford Courant Co., 200 Conn. 676, 513 A.2d 66 (1986); the reason for the employee's termination must be the basis of the public policy violation, not the actions of the employer in effecting, or subsequent to, the discharge. See Sheets v. Teddy'sFrosted Foods, Inc., supra, 179 Conn. 475. The first count alleges public policy violations that relate to the manner in which the plaintiffs were terminated and may give rise to various causes of CT Page 10388 action. The manner of the discharge, however, does not give rise to a wrongful discharge action, since in such an action the discharge is wrongful because the reason for the dismissal, not the manner in which it is carried out, violates public policy.
The plaintiffs may have remedies for the alleged public policy violations through a variety of other potential claims. SeeEpworth v. Journal Register Citizen, 1 Conn. Ops. 295, 296 (February 15, 1995, Pickett, J.) (plaintiff's remedy for claim that discharge violated public policy against defamation is an action for libel, not wrongful discharge). Here, the alleged public policy violations do not concern the reasons for the plaintiffs' dismissal, and therefore they do not support a cause of action for wrongful discharge. Accordingly, the motion to strike the first count of the amended complaint is granted.
 II.
The defendants move to strike the second count which alleges claims of breach of contract and promissory estoppel on the ground that the plaintiffs fail to allege a modification of the underlying employment-at-will contract sufficient to support these claims. Additionally, they argue that the defendants Kravis and Roehm cannot be personally liable for these claims because the plaintiffs were employees of the defendant corporation. The plaintiffs, however, argue that they have sufficiently pleaded the defendants' promise of job security, which constitutes, in the context in which it was made, an agreement to provide ample notice of termination, if not an agreement not to terminate without just cause.
In D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 520 A.2d 217 (1987), the plaintiff teacher sued for breach of contract arising from representations by the defendant school that "all present faculty members will be offered contracts for next year." Id., 211. Since the plaintiff failed to allege that the defendants "agreed either by words or action or conduct, to undertake any form of actual contractual commitment" to the plaintiff, the court refused to analyze the plaintiff's claims on a theory of breach of an implied in fact contract. Id., 211 n. 2. "A contract implied in fact, like an express contract, depends on actual agreement." Id.; Coehlo v. Posi-Seal International,Inc., 208 Conn. 106, 111, 544 A.2d 170 (1988).
In the second count, the plaintiffs fail to allege any actual agreement between the parties that would alter their employment CT Page 10389 agreement from employment-at-will. Significantly, the amended complaint fails to allege what the defendants represented to the plaintiffs prior to their discharge. In their memorandum of law, the plaintiffs claim that this count alleges that "the defendants represented to plaintiffs, as well as other employees of defendants that their jobs were secure. Such representation(s) by defendants occurred in order to address and reduce or eliminate plaintiffs concerns" over the breakup of the Kravis' marriage. The amended complaint, however, does not make such allegations. Paragraph 7(a) instead alleges that "[o]ne month prior to the aforesaid Notice, reduce or eliminate [sic] plaintiffs' concerns that their livelihoods or jobs were not threatened by a legal separation or dissolution of the marriage of Mr. and Mrs. Kravis." Apparently, the plaintiffs erroneously omitted the alleged representation in their amended complaint filed with the court. While on a motion to strike, the court is to construe the allegations most favorably to the pleader; Rowe v. Godou, supra, 209 Conn. 278; this court will not supply necessary allegations that inexplicably have been omitted from the pleading. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988) ("In ruling on a motion to strike, the court is limited to the facts alleged in the complaint."). Without an allegation of a promise or representation on the part of the defendants, the second count fails to allege a cause of action for breach of contract.
Even if the court were to consider the allegations as stated in the plaintiffs' memorandum of law, it is questionable whether these statements would amount to a sufficient contractual commitment to support an implied in fact contract. See Neuharth v.Conn. Institute for the Blind, 3 Conn. L. Rptr. 360 (March 8, 1991, Dunn, J.) (allegations of oral assurances that employee would not be discharged as a result of shift in defendant's business focus did not state cause of action for breach of contract or promissory estoppel); Barbato v. The William Backus Hospital, Superior Court, J.D. of New London at Norwich, no. 105452 (April 13, 1995, Hendel, J.).
Similarly, the plaintiffs fail to allege sufficient facts to state a cause of action for promissory estoppel. "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, supra, 202 Conn. 213, quoting Restatement (Second) Contracts, Sec. 90 (1973). A CT Page 10390 fundamental element of promissory estoppel is the existence of a "clear and definite promise which a promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, supra, 213.
As stated earlier, the plaintiffs fail to include the alleged promise or representation in their amended complaint thereby rendering this count legally insufficient. Even if the court were to consider the allegations as stated in the plaintiffs memorandum, it is also questionable whether the representation is "sufficiently promissory" or "sufficiently definite to support contractual liability." Id. Additionally, the amended complaint fails to allege that the defendants should have reasonably expected the plaintiffs to rely on their representations.
Since the plaintiffs fail to allege legally sufficient claims for breach of contract or promissory estoppel, the motion to strike the second count is granted.
 III.
The defendants also move to strike the third count alleging intentional infliction of emotional distress against the defendants Roehm and Weatherstone Corporation. The defendants argue that since they had the right as the plaintiffs' employer to dismiss the plaintiffs at will and order them off the premises, they cannot be liable for intentional infliction of emotional distress. The defendants contend that the plaintiffs fail to allege facts supporting the claims that they knew or should have known that their conduct would cause severe emotional distress and facts supporting a claim of severe emotional distress. The plaintiffs, however, argue that the alleged method, manner and timing of their dismissal and order to vacate support their claim.
In order to establish a cause of action for intentional infliction of emotional distress, the following four elements must be alleged: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his or her conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's distress; (4) the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986);DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991). Intent to cause injury is the gravamen of the tort. Id., 67. CT Page 10391
"Extreme and outrageous conduct is an essential element. Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice." Brown v. Ellis, 40 Conn. Sup. 165,167, 484 A.2d 944 (1984, McDonald, J.). Whether the defendant's conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court. Mellaly v. Eastmann Kodak Co., 42 Conn. Sup. 17, 18, A.2d (1991, Berdon, J.). Only where reasonable minds differ does it become a question for the jury. Id., citing Reed v. SignodeCorporation, 642 F. Sup. 129, 137 (D.Conn. 1986); 1 Restatement (Second), Torts Sec. 46, comment (h).
The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Mellaly v. Eastmann KodakCo., supra, 42 Conn. Sup. 19-20, quoting W. Prosser W. Keeton, Torts (5th Ed. 1984) Sec. 12, p. 60.
 Liability has been found only where the conduct has been so outrageous in character, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
Mellaly v. Eastmann Kodak Co., supra, quoting 1 Restatement (Second), Torts Sec. 46, comment (d).
In this case, the plaintiffs fail to allege sufficient facts to support their claim that the defendants engaged in extreme and outrageous conduct. The plaintiffs allege that the defendants used an armed security guard to notify them of their termination and gave them twenty-four hours to leave the premises when the plaintiff Merecedes Cypriano was on a planned vacation and the plaintiff Cypriano Muniz had just returned from planned surgery performed one day earlier. Cases from other jurisdictions, however, have held that facts similar to these do not amount to extreme and outrageous conduct supporting an action for intentional infliction of emotional distress. Freeman v. Kansas State Network,Inc., 719 F. Sup. 995 (D.Kan. 1989) (news anchor's termination CT Page 10392 three days after giving birth to child and on the day she returned home from hospital did not constitute extreme and outrageous conduct); Cox v. Keystone Carbon Co., 861 F.2d 390 (3rd Cir. 1988) (employee's termination on day he returned from work after triple bypass surgery did not constitute extreme and outrageous conduct). The plaintiffs fail to allege that the security guard said anything derogatory or demeaning, or that he acted in an inappropriate manner. While the defendants' behavior may have been "unthoughtful and lacked tact;" Freeman v. Kansas State Network, supra, 1000; the court concludes that, as alleged, it does not amount to extreme and outrageous conduct. Therefore, the motion to strike the third count is granted.
 IV.
The defendants also move to strike the fourth and fifth counts alleging claims for negligent and intentional misrepresentation. The defendants argue, inter alia, that the plaintiffs fail to set forth the alleged fraudulent statements supporting these counts. As stated earlier, the amended complaint fails to allege the statements that the plaintiffs allegedly relied upon and which serve as the basis for these counts. As a threshold matter, a plaintiff alleging negligent or intentional misrepresentation should allege the claimed false statements. In this case, the plaintiffs failed to include such an allegation in the fourth and fifth counts, and accordingly the motion to strike these counts is granted.
 V.
The defendants move to strike the sixth count alleging a claim for wrongful ejectment and forcible entry and detainer on two grounds. First, the defendants contend that the plaintiffs commenced this action past the six month statute of limitations. Second, the defendants contend that the plaintiffs cannot bring this claim where the possession of the premises was an incident of their employment, and thus rightful possession ceased on the termination of their employment. The plaintiffs, however, argue that the statute of limitations is not properly raised by a motion strike. Additionally, they claim that a tenancy was created by their employment and that they could only be removed from the premises through a summary process action. Since the court finds the defendants' first ground dispositive, it need not address the limitations issue. CT Page 10393
"A servant who occupies real property incidental to, and as a part of, his employment is not, in legal effect, in possession of the property so as to enable him to maintain an action of forcible entry and detainer against the master for forcible ejection or exclusion from the premises on the termination of his services." 35 Am.Jur.2d Forcible Entry and Detainer, Sec. 23; 36A C.J.S. Forcible Entry and Detainer, Sec. 21(d) ("an action does not lie in favor of a servant who has been ousted from possession of the master's house by the master on termination of the employment"); see Catropa v. Bargas, 17 Conn. App. 285, 551 A.2d 1285 (1989) (plaintiff's right to use golf pro shop was an incident to his employment and once that employment terminated his right to possession also terminated.); Guiel v. Barnes, 100 Conn. 737,125 A. 91 (1924).
In the sixth count, the plaintiffs allege that as a condition of their employment a tenancy was created in connection with a private apartment, but they do not allege that their possession of the apartment was anything more than an incident of their employment. There are no allegations that they signed a lease or paid rent, or that their possession of the apartment was independent of their employment relationship with the defendants. Additionally, they have not alleged anything beyond an employment-at-will contract with the defendants because none of their claims of improper termination is legally sufficient. A different situation would arise if the plaintiffs sufficiently alleged that their employment was wrongfully terminated, by breach of contract, promissory estoppel or in violation of public policy. If the plaintiffs were improperly terminated, then their right of possession would not cease. See Catropa v. Bargas, supra, 17 Conn. App. 290. In this case, however, the plaintiffs have not sufficiently pleaded that their employment was wrongfully terminated and they have failed to allege anything more than an employment-at-will contract. Under the facts alleged, once their employment came to an end, so did their right to possession. Id. Therefore, the motion to strike the sixth count is granted.
 VI.
The defendants move to strike the seventh count of the complaint alleging conversion and statutory theft arguing that the plaintiffs fail to allege sufficient facts to support a claim for statutory theft under General Statutes Sec. 52-564, which provides treble damages. The defendants contend that the plaintiffs have not alleged the necessary element of intent to deprive or CT Page 10394 appropriate property. The plaintiffs, however, claim that have sufficiently alleged a common law claim for conversion and that the intent required to support a claim for treble damages under Sec.52-564 may be inferred from the allegations.
"`Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights.'" Discover Leasing, Inc. v.Murphy, 33 Conn. App. 303, 309, 635 A.2d 843 (1993), quoting Devittv. Manulik, 176 Conn. 657, 660, 410 A.2d 465 (1979). "It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Citations and internal quotation marks omitted.) Id. Construed in a light most favorable to the plaintiffs, this count sufficiently alleges a common law claim for conversion.
The defendants do not argue that this count fails to allege a claim for common law conversion, but instead argue that it does not sufficiently allege a claim for statutory theft under 52-564. In the plaintiffs' prayer for relief they seek treble damages under this statutory section. The defendants' motion to strike, however, is directed at each count of the complaint, not at any of the prayers for relief. While this court will consider the defendants' arguments concerning its motion to strike each count of the complaint, it will not address a motion to strike a prayer for relief when it is not even raised in the motion itself. To do so the court would be ignoring the requirement that a separate motion be filed as well as a memorandum of law. Since the defendants motion raises no claims concerning the plaintiffs' prayer for relief, the court will not address what is essentially a motion to strike the plaintiffs' prayer for relief for treble damages under Sec. 52-564. Accordingly, the motion to strike the seventh count is denied.
 VII.
The defendants also move to strike the eighth count alleging a violation of CUTPA arguing that allegations of an employer-employee relationship do not support a claim under CUTPA and that the plaintiffs fail to allege facts supporting a landlord-tenant relationship. The plaintiffs contend that they have alleged a CT Page 10395 tenancy relationship supporting a CUTPA claim.
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660,613 A.2d 838 (1992), the Connecticut Appellate Court held that a claim based on the employee-employer relationship was insufficient to support a cause of action under CUTPA. Id., 670-71, relying on Banerjee v.Robert, 641 F. Sup. 1093 (D.Conn. 1986). As stated earlier, the plaintiffs' allegations fail to support a conclusion that a tenancy relationship existed with the defendants. Instead, the allegations show that the only relationship between the plaintiffs and defendants was that of an employer and employee, and that any living arrangements were merely incidents of that relationship. Additionally, there are no allegations of a consumer relationship or that the parties were business competitors. See Larsen ChelseyRealty Co. v. Larsen, 232 Conn. 480, ___ A.2d ___ (1995). Thus, the defendants motion to strike the eight count is granted.
 VIII.
In conclusion, the defendants' motion to strike counts one, two, three, four, five, six, and eight is granted. The motion to strike the seventh count, however, is denied.
PICKETT, J.