[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a complaint in seven counts brought by the plaintiff Philippe Berard Pedrazzo against the defendant Daley Moving and Storage, Inc. of Torrington d/b/a Security Storage. Count one alleges breach of contract; count two alleges conversion; count three alleges theft; count four alleges violation of § 42-159, et. seq. of the General Statutes dealing with self-service storage facilities; count five alleges violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a, et. seq.; count six alleges emotional distress and mental anguish from defendant's wrongful conduct; count seven alleges willful, wanton and malicious conduct with intent to inflict emotional distress. The defendant pleads in special defense plaintiff's failure to secure storage bins as required pursuant to the rental contract; CT Page 3470 plaintiff's contractual agreement to indemnify for acts or omissions to act by the plaintiff and that the defendant would not be liable to the plaintiff for loss or damage resulting from acts or omission to act of other tenants or any third person; plaintiff signed a release of liability to the defendant when plaintiff removed the remainder of his property from the rental bin.
The facts are as follows. The plaintiff over the years has been an actor, served three years in the Air Force during World War II, had a bi-weekly radio and television program, took on writing commissions, worked as an editor in a New York publishing concern, worked with CBS for three years, went with CBS as its arts editor where he remained for fifteen years leaving in 1997. In July of 1997 he rented a store front restaurant and set up a gourmet shop where he sold the ingredients with instructions on how to make the food item. He subsequently moved his shop and reopened as a restaurant called Philippe. He stopped working for health reasons in 1982 and subsequently retired to Cornwall, Connecticut where he brought a house.
Prior to purchasing the Cornwell property the plaintiff had owned property at East 49th Street in New York City which was sold for $1,450,000 in March of 1986. Part of those proceeds according to his then New York attorney went toward the Cornwall property. The rest remained with his New York attorney whom the plaintiff accuses of embezzlement. Plaintiff owned a house on Fire Island in 1972 with a co-owner Jay Maroon. That house was sold for $395,000 and though the plaintiff claims all of this money was his, he never saw any of it. Plaintiff owned property in Italy and Paris which he sold to buy the Cornwall property.
Plaintiff owned the Cornwall property from 1986 to 1996 when the property was foreclosed by the bank holding the mortgage. On the day he was scheduled to be evicted the plaintiff was recovering from hip surgery. Arrangements had been made by the Connecticut State Department of Social Services to have the defendant Daley Moving and Storage, Inc. (Daley) store plaintiff's personal property in Daley's Self Storage facility.
A local mover Chris Goodwin handled the move. He was overwhelmed by the amount of unpacked goods he found in the house. There were only three pieces of furniture, a bed upstairs and a bed and chair downstairs. The plaintiff was seated in the downstairs chair. Since the house had been under construction for all of the ten years the plaintiff owned it, there were doors, frames, window frames and basic building materials which the plaintiff asked the mover to take because the bank had foreclosed. Before things were packed Chris walked through the house. He did not see valuable antiques. Chris had moved antiques for eight or nine years with CT Page 3471 reputable dealers.
Since the Cornwall house had been under construction for all of the ten years the plaintiff owned it, the plaintiff's belongings from his New York moves were in various stages of being in and out of their boxes but not put away. When the instant move was complete the boxes and loose items filled two bins. The move took one day and involved two men and one truck. The mover, Chris, was not given locks by the plaintiff to secure the bins. Therefore, when the move was complete the bin doors were closed but were not locked.
Right after the move the plaintiff went to Florida to a friend's house, to recuperate from his hip surgery. He did not go to the storage facility until his return to Connecticut some months later. In the interim upon learning that the plaintiff had left the state, the Department of Social Services (DSS) stopped paying for the two storage bins. Originally DSS was to have paid for the bins for 90 days. As a result of this action by DSS payments became delinquent.
Shortly after the plaintiff's goods were stored in the rented bins Jeffrey Bunch, Daley's then operations manager, while doing his routine nightly check of the bins noticed that the plaintiff's bins had no locks. He gave this information to Wendy Cooper or Amy Robinson, Daley's office staff. Letters were sent to the plaintiff advising him of the need to secure his bins. In February of 1997 Bunch noticed bin #27 was open and he could see what seemed to be garbage and "stuff left over," 2 paintings and 2 pieces of furniture that looked broken. Bunch notified the office as to what he had found as to bin #27, after which he cleaned out the bin and put the remaining goods into a secured storage truck. The two pictures were subsequently given to a local church but retrieved and returned to the plaintiff when he asked for them.
On August 6, 1997 Bunch saw the plaintiff at bin #26 and the plaintiff was emptying out the bin. The plaintiff was taking "stuff" out and putting it into a small wagon. The bin was emptied that day.
During the months between plaintiff's return to Connecticut in the fall of 1996 and August 6, 1997 when the last bin was emptied out, letters had gone out from Daley to the plaintiff regarding his delinquent bill as well as advising him that his bins were without locks. During this period the plaintiff made a number of trips to the bins with different people. Some of whom were prospective buyers, others were there to help him move boxes around and/or to put goods into his car. At various times the plaintiff stopped by the business office and made payments toward his bill. In February of 1997 when plaintiff went to his bins and found bin #27 cleaned out he asked about two pictures and a set of books which CT Page 3472 Daley was able to retrieve from the church that had the pictures and the books from their own secured storage trailer where abandoned goods were held.
Plaintiff's theft and conversion claims are premised on the absence of property from his rented self storage bins. When the plaintiff's goods were moved, from the Cornwall house to the self-storage bins they were not inventoried by the plaintiff. The mover simply boxed what whatever had to be boxed and put the goods in the storage bins. The rental agreement signed by the plaintiff on June 4, 1996, places responsibility for securing the stored items on the lessee. The lease provides that all property stored within the stall by the tenant shall be at the tenant's sole risk.
The plaintiff at no time inventoried or insured property which he for the first time at trial valued at $600,000. The plaintiff applied for State welfare assistance in 1995 and declared in that application that he owned no property other than his car and the Cornwall house which was being foreclosed. When as part of that application process he was asked how he managed, he responded that he borrowed money from friends. An attorney who lived directly across the street where the Cornwall house was located saw the property abandoned for an eighteen month period during which time the door to the house was left open allowing raccoons and squirrels to go in and out.
Plaintiff's statement that workers were in and out of the house as an explanation is hardly consistent with there being valuable property in the house.
Under the terms of the lease contract the plaintiff has free and unfettered use of the two storage bins he rents. He does not have to tell Daley what he stores in them. He does not have to tell Daley what he removes from them. The arrangement can be likened to that of tenant and landlord. The tenant is responsible for whatever personal property he brings into the rented premises. The landlord is responsible for the common areas. If the landlord's care or lack of care of the common areas cause damage to the tenant or the tenant's possessions then there is a potential for liability on the part of the landlord. In the instant case there are no allegations that Daley was negligent in regard to the maintenance of the facility as to those areas for which it was responsible.
The defendant contends the higher standard of clear and convincing evidence should be imposed as to the statutory theft claim, under C.G.S. § 52-564, citing Freeman v. Alamo Management Co., 24 Conn. App. 124
(1991) for the proposition that "this high standard is required to CT Page 3473 sustain claims which have serious consequences or harsh or far-reaching effects on individuals." Id. at 129. In support of this the defendant cites the devastating effect those allegations have on the kind of business Daley operates, making people fearful of the safety of their stored belongings.
The court does not have to reach the issue of whether a higher standard of proof is required for the statutory theft claim because on the facts found the plaintiff does not even make his theft claim using the preponderance of the evidence standard of proof. There is not one scintilla of evidence linking the defendant to a theft of the plaintiff's goods. In Suarez-Negrete v. Trotta, 47 Conn. App. 517 (1998), the court stated that statutory theft under § 52-564 was synonymous with larceny under C.G.S. § 53a-119. § 53a-119 "a person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."
On the facts found this court concludes that the actions of Daley in dealing with bin #27 as abandoned was consistent with the condition in which the bin was found i.e. wide open with debris strewn around and, the fact that storage charges were not being paid and letters bringing this to the plaintiff's attention were not being responded to. The two pictures and set of books still there were conserved and returned to the plaintiff when he asked for them.
The plaintiff's conversion claim premised primarily on how the defendant dealt with bin #27 is not proven by a preponderance of the evidence. "Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303,309 (1993). In addition, conversion requires that the owner be harmed as a result of the unauthorized act. Devitt v. Manulik, 176 Conn. 657
(1979). On the facts found the defendant was justified in treating the bin as abandoned, conserving what appeared to be left of any value and disposing of what looked to be debris; and, ultimately returning the conserved goods to the plaintiff when he inquired of them at the point where he appeared at the facility to pay on his delinquent storage charges.
The claims of violation of C.G.S. § 42-159, et. seq. and of C.G.S. § 42-110a, et seq. are premised on the allegation that the defendant failed to notify the plaintiff of a statutory sale of his goods based on his being delinquent in his storage payments. There is no evidence that in fact any statutory sale was held. The sale of goods which did take place was that of goods belonging to the deceased father of Gina Mariana CT Page 3474 who became the owner of Daley upon his father's death. Carol Morgan was the purchaser. She upon being shown a list of the plaintiff's goods did not recognize any as having been among those goods which she had examined at that time.
Plaintiff's claims of emotional distress and mental anguish from the defendant's wrongful conduct and plaintiff's claims of willful, wanton and malicious conduct with intent to inflict emotional distress are based on the plaintiff's allegations that the defendant engaged in wrongful conduct toward the plaintiff's personal property and that this conduct rose to the level of being wilful, wanton and malicious.
The court has found that the plaintiff has failed to prove his breach of contract, theft and conversion claims and his statutory claims. Since the plaintiff cannot show that the defendant was responsible for the absence of any of the goods stored in his storage bins there is no basis on which the defendant can be held responsible for any emotional upset the absence of his goods from the bins caused the plaintiff.
Since the plaintiff has not proven his case in chief, this court does not reach the defendant's special defenses. Accordingly, judgment may enter in favor of the defendant Daley Moving and Storage, Inc. of Torrington d/b/a Security Storage as to counts one, two, three, four, five, six, and seven.
Hennessey, J.