ELOISE MARINOS ET AL. *v.* DAVID M. POIROT ET AL.
(AC 33193)

Lavine, Bear and Bishop, Js.

---

Argued October 27—officially released December 27, 2011

*John R. Williams*, for the appellants (plaintiffs).

*David M. Poirot*, with whom was *Gordon S. Johnson, Jr.*, pro se, for the appellees (defendants).

*Opinion*

LAVINE, J. The plaintiff, Eloise Marinos, individually and as administratrix of the estate of Steven F. Meo (Meo),[1] appeals from the judgment of the trial court rendered following the granting of the motions for summary judgment in favor of the defendants, David M. Poirot and Gordon S. Johnson, Jr. On appeal, the plaintiff claims that the trial court improperly granted the motions for summary judgment on the (1) breach of the duty of loyalty counts, (2) conversion and civil theft counts, (3) computer offense counts and (4) Connecticut Unfair Trade Practices Act (CUTPA)[2] counts on the ground that the plaintiff failed to produce evidence of ascertainable damages or harm. We affirm the judgment of the trial court.

The following facts provide the background for our resolution of this appeal. The plaintiff and Meo were wife and husband. Meo was engaged in the practice of

---

[1] We refer in this opinion to Marinos in both capacities as the plaintiff.

[2] See General Statutes § 42-110a et seq.

law as the sole proprietor of the Law Office of Steven F. Meo (Meo law office) and in 1992 employed Poirot as an associate. In October, 2005, Meo was hospitalized and remained hospitalized until his death on April 25, 2006. From the time Meo was hospitalized until his death, Poirot was the only attorney in the Meo law office, and he managed its clients and files. In December, 2005, Meo authorized Poirot to be added as a signatory to the Meo law office's operating checking account and its clients' funds IOLTA account so that Poirot could manage and facilitate settlement disbursements for clients. On April 28, 2006, Poirot left the Meo law office to open his own practice and was retained by approximately fifty-one of the fifty-three clients of the Meo law office to handle their legal matters to conclusion.

Johnson, an attorney licensed to practice law in Wisconsin, specializes in traumatic brain injury litigation. Beginning in 2002, Johnson, with Meo as local counsel, litigated certain traumatic brain injury cases in Connecticut. Following Meo's death, Johnson and Poirot litigated two traumatic brain injury cases that had originated in the Meo law office. In April, 2009, the plaintiff commenced this action against the defendants.[3] Her revised complaint sounds in nineteen counts.[4] In

---

[3] In its decision, the court referenced *Poirot* v. *Marinos*, 123 Conn. App. 507, 1 A.3d 1274 (2010) (interpleader action regarding distribution of attorney's fees generated on contingency basis for two personal injury actions).

[4] The plaintiff's revised complaint filed August 18, 2009, alleges the following counts against Poirot: count one, breach of the duty of loyalty; count two, computer offense pursuant to General Statutes § 52-570b; count three, trade secrets violation; count four, conversion; count five, civil theft; count eight, civil conspiracy; count nine, CUTPA violations; count ten, breach of the duty of loyalty; count eleven, computer offense pursuant to § 52-570b; count twelve, trade secrets violation; count thirteen, conversion; count fourteen, civil theft; count fifteen, breach of the duty of loyalty; count sixteen, computer offense pursuant to § 52-570b; count seventeen, trade secrets violation; count eighteen, conversion; and count nineteen, civil theft. As to Johnson, the complaint alleges civil conspiracy in count six and CUTPA violations in count seven. The plaintiff sought damages, disgorgement of

sum, the plaintiff alleges that in November, 2005, Poirot began to plan the opening of his own law office and to appropriate business from the Meo law office. The plaintiff alleges that Poirot stole clients from the Meo law office, as well as supplies and the services of its employees. Moreover, the plaintiff alleges that Poirot and Johnson conspired to appropriate cases from the Meo law office to their benefit and to the detriment of the Meo law office. The plaintiff claims that, as Meo's widow and the administratrix of his estate, she is the successor to Meo's interest in the Meo law office and that she was harmed by the defendants' acts. The defendants deny the material allegations of the revised complaint and allege certain special and affirmative defenses, including, among others, satisfaction and accord, res judicata and collateral estoppel.

On September 27, 2010, Poirot filed a motion for summary judgment, with a memorandum of law and supporting documents, as to counts one through five and eight through nineteen of the revised complaint. Johnson filed his motion for summary judgment, with a memorandum of law and supporting documents as to counts six and seven, on October 8, 2010. The plaintiff filed objections to both motions accompanied by memoranda of law and supporting documents. The parties appeared at short calendar on November 8, 2010, to argue the motions for summary judgment. Additional facts will be addressed as necessary.

Our rules of practice provide that "[i]n any action, except administrative appeals which are not enumerated in Section 14-7, any party may move for a summary judgment at any time . . . ." Practice Book § 17-44. "A motion for summary judgment shall be supported by such documents as may be appropriate, including but

compensation, treble damages, punitive damages, attorney's fees and costs, and legal and equitable relief.

not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . Any adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence." Practice Book § 17-45. "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009).

"A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citation omitted; internal quotation marks omitted.) *Curley* v. *Kaiser*, 112 Conn. App. 213, 220, 962 A.2d 167 (2009). In ruling on a motion for summary judgment,

"[t]he test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000).

I

The plaintiff's first claim is that the court improperly granted summary judgment in favor of Poirot on counts one, ten and fifteen, which allege breach of the duty of loyalty. The court found that the plaintiff had not submitted evidence that quantified the damages that the plaintiff purportedly sustained as a result of Poirot's alleged breach of the duty of loyalty. We agree with the trial court.

The court found that the plaintiff alleged that Poirot breached the duty of loyalty that he owed to Meo by using the Meo law office staff and supplies to open his own law office, entering into contracts on behalf of the Meo law office without approval, signing checks without proper authorization and appropriating clients and computer data to the detriment of the Meo law office.

This court addressed a breach of the duty of loyalty claim in *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 533–38, 862 A.2d 837 (2004), aff'd, 276 Conn. 310, 885 A.2d 758 (2005). "The relationship of principal and agent implies trust or confidence by the principal in the agent, and the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer. 3 Am. Jur. 2d, Agency § 205 (2002)." *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 535. "A party may recover for breach of loyalty in tort. In a tort action, harm is a necessary element of the prima facie case. 2 Restatement (Second), Agency, Liability for Loss Caused § 401, comment (b) (1958)." *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 535. "One

of the elements of a cause of action in tort for a breach of loyalty is actual harm, without which the cause of action is incomplete. . . . If the plaintiff did not prove specific, quantifiable harm, it cannot recover any damages in tort for the alleged delicts of the defendant because harm is an element of the plaintiff's cause of action in tort. Restatement (Second), supra, § 401, comment (b)." *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 536.

In *News America Marketing In-Store, Inc.*, the trial "court expressly found that the plaintiff had failed to adduce any evidence of harm resulting from the alleged acts of misconduct by [the defendant Steven] Marquis." Id., 535. In the present action, the court found that the plaintiff failed to provide evidence of measurable damages resulting from Poirot's alleged breach of the duty of loyalty and failed to include an accounting of alleged damages in her objection to Poirot's motion for summary judgment. "[P]roof of a specific loss is an essential element in a cause of action for breach of the duty of loyalty owed by an employee to his employer." (Internal quotation marks omitted.) *News America Marketing In-Store, Inc.* v. *Marquis*, 276 Conn. 310, 313, 885 A.2d 758 (2005).

On appeal, the plaintiff claims that she presented evidence of quantifiable damages. We agree that she presented a list of damages that could be quantified, but she did not present evidence of the value of those damages. Although "the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion [for summary judgment] . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 591, 715 A.2d 807 (1998). Demonstrating a genuine issue of

material fact requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. See *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 378–79, 260 A.2d 596 (1969). To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. See *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 569, 512 A.2d 893 (1986).

To oppose successfully the motion for summary judgment, the plaintiff was required to introduce evidence to indicate the dollar value of the harm she claims she sustained.[5] See *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 86 Conn. App. 536–37. Because the plaintiff failed to present a dollar value of her alleged loss, the court properly found that there were no genuine issues of material fact as to whether the plaintiff sustained a quantifiable harm resulting from Poirot's alleged breach of the duty of loyalty. The court therefore properly granted Poirot's motion for summary judgment on the breach of the duty of loyalty counts.

II

The plaintiff's second claim is that the court improperly granted summary judgment on counts four, thirteen and eighteen alleging conversion, and counts five, fourteen and nineteen alleging civil theft[6] against Poirot by

---

[5] We understand that, in some instances, a statement of the amount of damages sustained cannot be made with mathematical precision; see *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 693, 795 A.2d 1274 (2002); but a plaintiff cannot rely on purely speculative assertions of loss.

[6] The court stated that it analyzed the counts of conversion and civil theft together because they "contain nearly identical factual allegations [and] '[t]he elements of civil theft are . . . largely the same as the elements to prove the tort of conversion.' *Sullivan* v. *Delisa*, 101 Conn. App. 605, 620, 923 A.2d 760, cert. denied, 283 Conn. 908, 928 A.2d 540 (2007)."

concluding that the plaintiff had not provided sufficient evidence of her damages.[7] We disagree.

The tort of "[c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 169, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). The tort of conversion requires, in addition, that the owner be harmed as a result of the unauthorized act. See *Devitt* v. *Manulik*, 176 Conn. 657, 660, 410 A.2d 465 (1979). "[S]tatutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 521, 705 A.2d 215 (1998).

In his motion for summary judgment, Poirot argued that the plaintiff was unable to establish any damages resulting from his alleged acts.[8] In her objection, the plaintiff claimed that she had provided evidence of measurable damages. The court found that the plaintiff had failed to produce any evidence to establish the value of the items allegedly taken or that the plaintiff was damaged by Poirot's acts. She therefore could not establish a prima facie case of conversion or civil theft.

On appeal, the plaintiff claims that the issue is whether she is obligated to prove the precise amount

---

[7] The plaintiff's conversion and civil theft claims encompassed both the alleged misappropriation of clients, client files and client fees and the alleged misappropriation of office supplies and the time of Poirot and the Meo law office staff. The court found that the claims related to clients and their files and fees were barred by the doctrine of res judicata. See *Poirot* v. *Marinos*, 123 Conn. App. 507, 1 A.3d 1274 (2010). The plaintiff does not contest that portion of the court's ruling on Poirot's motion for summary judgment.

[8] The plaintiff alleged that she was damaged by Poirot's personal use of office equipment, staff and office supplies.

of her damages or to prove only the existence of some damages that a jury would be capable of determining. She relies on an unassailable proposition of law that Connecticut "does not require a party claiming damages to prove them with exactitude or precision. Indeed, a party seeking damages must only afford a basis for a reasonable estimate by the trier, court or jury, of the amount of that [party's] loss. From the very nature of the situation, the amount of loss cannot be proved with exactitude and all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 241, 828 A.2d 64 (2003). The facts of this case, however, undermine the plaintiff's claim.

The plaintiff argues that although her responses to Poirot's interrogatories do not provide appraisals of the value of the office supplies, the responses itemize the categories of loss with sufficient clarity so that a jury could make a fair and reasonable estimate of the damages. Our review of the plaintiff's answers to the relevant interrogatories persuades us that those answers do not meet the standard by which a jury could assign a fair, just and reasonable value of the damages the plaintiff alleges she sustained.

Meo died in April, 2006, and the Meo law office closed soon thereafter. The plaintiff commenced this action in April, 2009, and Poirot served interrogatories on the plaintiff on June 16, 2009. The plaintiff received an extension of time within which to respond to the interrogatories and answered them on August 14, 2009. Interrogatory number five of Poirot's first set of interrogatories stated: "Provide a detailed description, including the estimated fair market value, of each item of office supplies and books of the [Meo law office]

that you allege Poirot took for his own purposes, as alleged in paragraph 23 (c) of each count of the Complaint." The plaintiff's answer stated: "Mr. Poirot took, for his own use, the following office supplies: copy paper, paper clips, note pads, pens, file folders, binders, boxes, tape, envelopes. The plaintiff *does not know the fair market value* of the office supplies that were usurped by the defendant, David Poirot." (Emphasis added.)

Poirot filed a motion for summary judgment on September 27, 2010. The parties appeared at short calendar to argue the motion on November 8, 2010. Our review of the court file indicates that the plaintiff did not request an extension of time to respond to the motion for summary judgment. See Practice Book § 17-45. Our review encompassed the documents the plaintiff submitted to oppose the summary judgment motion, including her responses to Poirot's interrogatories. Her answer to the fifth interrogatory lists office supplies that the plaintiff alleges Poirot misappropriated, but not the quantities by unit or the value of a unit. She also stated that she was unable to ascertain the fair market value of those supplies. In order to prevail on claims of conversion and civil theft, a plaintiff must prove harm. If the plaintiff could not assign a fair market value to the office supplies more than four years after the Meo law office closed, on this record, no jury could award damages without resorting to speculation. The court therefore properly granted Poirot's motion for summary judgment on the counts of conversion and civil theft.

### III

The plaintiff's third claim is that the court improperly granted summary judgment on counts two, eleven and sixteen alleging computer crimes; see General Statutes § 53a-251; on the ground that the expenses she incurred

with regard to the computer system in the Meo law office were related to trial preparation. We do not agree.

In her revised complaint, the plaintiff alleges, among other things, that "Poirot was not authorized to access the computer system of the [Meo law office] to set up his own law practice and appropriate the business of the [Meo law office]. . . . Poirot deleted data from the computer systems of the [Meo law office] to cover up his actions, and the [e]state has incurred substantial expenses in reconstructing the deleted data. . . . Plaintiff is entitled to recovery of damages pursuant to . . . [General Statutes] § 52-570b." In responding to the revised complaint, Poirot asserted the affirmative defense to the claim of unauthorized access that he was authorized to access the computer system of the Meo law office.[9] See General Statutes § 53a-251 (b) (2).

Section 53a-251 provides in relevant part: "(b) . . . (1) A person is guilty of the computer crime of unauthorized access to a computer system when, knowing that he is not authorized to do so, he accesses or causes to be accessed any computer system without authorization. . . . (e) . . . A person is guilty of the computer crime of misuse of computer system information when . . . (2) he intentionally or recklessly and without authorization (A) alters, deletes, tampers with, damages, destroys or takes data intended for use by a computer system . . . ." Section 52-570b (c) provides in relevant part: "[A]ny person who suffers any injury to person, business or property may bring an action for damages against a person who is alleged to have violated any provision of section 53a-251. The aggrieved person shall recover actual damages and damages for

[9] In ruling on Poirot's motion for summary judgment as to the computer offense counts, the court found that the plaintiff had failed to present it with documents demonstrating a genuine issue of material fact as to Poirot's authorization to use the Meo law office computer system. It decided the motion, however, solely on the issue of measurable damages.

unjust enrichment not taken into account in computing damages for actual loss . . . ."

The court found, among other things, that the plaintiff alleged that Poirot did not have authorization to access and to use the Meo law office's computer system to set up his own law practice and to appropriate business from the Meo law office. Moreover, the plaintiff alleged that Poirot deleted data from the Meo law office computer system to "cover up" his actions and that the plaintiff incurred substantial expenses in reconstructing the deleted data. The court noted, pursuant to *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 86 Conn. App. 541–42, that expenses incurred by a party in investigating alleged wrongdoing constitutes a litigation expense and may not be claimed as damages. The court concluded that any expenses the plaintiff paid to recover the allegedly deleted data are not recoverable. The court also found that the circumstances of this case are not those of an existing law firm that has alleged a loss of future business or some other financial hardship due to a departing employee's acts. The Meo law office closed shortly after Meo's death. The court concluded therefore that there was no issue of material fact as to whether the plaintiff had sustained damages resulting from the alleged computer crimes. For the foregoing reason, the court properly granted summary judgment on counts two, eleven and sixteen.

IV

The plaintiff's fourth and final claim is that the court improperly granted summary judgment on count nine, which alleges CUTPA violations as to Poirot, and count seven, which alleges CUTPA violations as to Johnson, on the ground that she failed to present evidence of damages within the meaning of Connecticut law.[10] We disagree.

_____

[10] The court did not address Poirot's argument that CUTPA did not apply to the facts of this case. Poirot claimed that the Meo law office could not have remained in business after Meo's death because Meo was its sole

"Although CUTPA is primarily a statutory cause of action; see General Statutes § 42-110b; it equally is recognized that CUTPA claims may arise from underlying causes of action, such as contract violations or torts, provided the additional CUTPA elements are pleaded." *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 139, 2 A.3d 859 (2010). The factual basis of the plaintiff's CUTPA claims is the defendants' alleged conspiracy to appropriate the traumatic brain injury cases of the Meo law office.

"A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he [or she] must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he [or she] must present evidence providing the court with a basis for a reasonable estimate of the damages suffered." (Internal quotation marks omitted.) *MacMillan* v. *Higgins*, 76 Conn. App. 261, 279, 822 A.2d 246, cert. denied, 264 Conn. 907, 826 A.2d 177 (2003). The plaintiff had the burden of presenting facts to the court giving rise to a genuine issue of fact that she and the estate suffered an ascertainable loss as a result of the defendants' alleged acts. See *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 639, 698 A.2d 258 (1997).

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation. . . . An ascertainable loss is a loss that is capable of being discovered, observed or established. . . . The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with

proprietor and that, upon the death of the owner, the plaintiff had no authority to continue the Meo law office.

deprivation, detriment and injury. . . . To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 217–18, 947 A.2d 320 (2008).

The court found that, although the plaintiff was not required to provide proof of actual damages in the form of a specific dollar amount, the damages must be measurable. The plaintiff claimed to have provided measurable damages in response to Poirot's interrogatories and requests for production, namely, exhibits three, four and five. The court found, however, that the plaintiff's responses do not contain any itemization of damages that supports her CUTPA claims.[11] The court also found that Poirot repeatedly requested that the plaintiff state the amount of damages allegedly sustained. In response to Poirot's first set of interrogatories, on August 14, 2009, the plaintiff stated: "A complete account of financial damages and losses is ongoing, therefore no itemization can be listed herein. As soon as the cumulative value has been assessed we will forward a copy of the same." As of the date of the short calendar argument on the defendants' motions for summary judgment, the plaintiff had failed to produce an itemization of her claimed CUTPA damages. For the

---

[11] On the basis of our review of the exhibits, we agree with the trial court. Interrogatory number two of Poirot's second set of interrogatories stated: "State the percentage of the [Meo law office's] fees generated by practice area for each of the years 2001 to the present." The plaintiff's answer stated: "Account records do not permit sorting to obtain this type of data; however, [the plaintiff] obtained basic percentages of Case Type by sorting Needles Data to obtain number and type of cases CLOSED each calendar year, results are as follows. NOTE: These numbers are NOT based on FEES generated, but rather for Case Type CLOSED in a given calendar year."

foregoing reasons, we conclude that the court properly granted the defendants' motions for summary judgment on counts seven and nine.

The judgment is affirmed.

In this opinion the other judges concurred.